No. 37,730

ORLAND HAZEN and CHARLES FLEMING, composing a partnership under the firm name of SUNFLOWER MANUFACTURING COMPANY, *Appellees*, v. GEORGE GAREY, *Appellant*.

(212 P. 2d 288)

Opinion filed December 10, 1949.

*Donald J. Magaw*, of Osborne, and *Ralph H. Noah*, of Beloit, argued the cause, and were on the briefs for appellant.

*H. McCaslin*, of Osborne, argued the cause, and was on the briefs for appellees.

The opinion of the court was delivered by

PRICE, J.: This is an action on an oral agreement pertaining to the sale and assignment of patent rights. The petition, as amended,

sets forth three causes of action—(1) For specific performance; (2) for damages in the nature of *quantum meruit* recovery in case specific performance be denied; and (3) for damages by reason of unjust enrichment in the event specific performance be denied.

Defendant's demurrer to each of the three causes of action set out in the petition, as amended, was overruled and it is from that order this appeal was taken.

The petition, which was filed November 20, 1948, recites the following story:

Plaintiffs' residence and principal place of business is Beloit, where they conduct a business under the firm name of Sunflower Manufacturing Company. In 1941 the United States patent office issued to defendant a patent for a "diamond packer," the same being a farming device and appliance invented by defendant, consisting of a metal wheel with an arrangement of spiked wedges or knobs on its circumference and used in packing ground in the preparation of land for farming purposes. Defendant, by virtue of his patent, owned a monopoly on the manufacture, sale and distribution of this device, and on or about July 6, 1948, in the cities of Downs and Osborne, Kan., plaintiffs and defendant orally agreed that plaintiffs should thenceforth have the exclusive right in the United States, during the life of such patent, to manufacture, sell and distribute all machines and implements wherein and whereby such new and novel principles so patented should or could be used. Plaintiffs promised and agreed to pay defendant one dollar royalty up to the number of 3,000 which they would manufacture and sell, and the sum of eighty-five cents per wheel on all those manufactured and sold above 3,000, said royalty payments to be paid defendant by the 10th of each succeeding month; and plaintiffs further agreed that they would manufacture and sell at least 600 of such wheels during the remainder of 1948, at least 3,000 during 1949, and that thereafter they would proceed with the manufacture and sale with due diligence to the end that the demand for such implements would be met with all reasonable dispatch. It was further agreed that in the event plaintiffs should fail to pay the royalty payments when due, or should fail to manufacture and sell the number of wheels as agreed during the years 1948 and 1949, or in case they should thereafter fail to use due diligence in the manufacture and sale of the implements to satisfy the demand, all rights acquired by them in such invention under the contract should revert

to defendant and they would have no further right, title or interest in the same. Plaintiffs further agreed to use their best efforts in advertising the implements so as to create a demand, and they further agreed to keep records of all sales which would be open to inspection by defendant at all times.

The defendant agreed and promised to plaintiffs that he would cause the oral agreement to be reduced to writing, execute the same and present it to plaintiffs for execution so that the latter would have written evidence of their right to manufacture and sell the implements in order to enable them to procure adequate financing for the carrying on of such venture; that plaintiffs' lack of adequate financing at the time of making the oral agreement was well known to defendant, and that the further purpose of the parties in agreeing to execute the contract in writing was to put plaintiffs in possession of evidence such as would assure prospective dealers and agents of their right and ability to furnish such implements as would be necessary to supply the demand.

That on July 6, 1948, plaintiffs and defendant went to the office of defendant's attorney in Osborne for the purpose of drawing up the written contract and were informed by the attorney that he would require several days to familiarize himself with the subject matter and the law applicable and that he would then reduce the agreement to writing, to which both the plaintiffs and defendants assented. That defendant then asked plaintiffs to proceed with the manufacture and sale of the implements, as orally agreed between them, and promised that he would procure the written contract as soon as possible. That pursuant to such assurance plaintiffs, at the request of defendant, took from the premises of defendant in Osborne county to plaintiffs' place of business in Beloit the small number of wheels and parts which defendant had previously caused to be manufactured, and immediately thereafter, at defendant's request, took over such wheels, parts and machinery as had been previously manufactured at the request of plaintiffs by a manufacturing concern in Salina; that on July 20, 1948, plaintiffs paid defendant for the wheels and parts thus furnished by him the sum of $102.08, which was accepted by him in satisfaction of the royalty payments upon the wheels so furnished, and that plaintiffs likewise assumed and paid to the Salina manufacturing concern all obligations of the defendant.

The petition further alleges that immediately subsequent to the

making of the oral contract sued on plaintiffs proceeded in good faith and with due diligence to manufacture, advertise and sell the implements; accumulated a stock pile of iron and steel necessary to their manufacture; that in order to establish a long range advertising and selling program, attended eight of the principal agricultural fairs held in Kansas where they advertised and demonstrated the implements at an expense of $800; that they made numerous visits to various dealers in Kansas, Nebraska, Oklahoma, Colorado and South Dakota, established fifteen dealerships, and in so doing have expended more than $5,000 in traveling more than twelve thousand miles in the prosecution of such work, the expense of which amounted to $1,200; and that since making the oral contract they have devoted their business building in Beloit as headquarters for the advertising, sale, distribution, storage and as an assembly plant for the implements, and that the building was of the reasonable rental value of $150 per month.

That plaintiffs purchased materials to be used in the manufacture of the implements in the sum of $10,352.10, have paid out other necessary expenses for advertising in the sum of at least $5,000 and that they have on hand implements and material for manufacturing them of the value of $8,445, which would be practically valueless unless sold as completed implements. That a considerable number of such services, including the advertising, demonstration to dealers and at agricultural fairs, travel expenses and the furnishing of a business building, were all unnecessary for the manufacture and sale of the minimum number of wheels required to be sold under the oral contract, but that such services were rendered and expenses incurred in furtherance of a long-range selling campaign in order to create a market in excess of the minimum requirements of the contract, and that the minimum requirements thereof could have been supplied by plaintiffs with substantially no expense except for the cost of the materials and cost of manufacture; that plaintiffs have completed arrangements for the manufacture, distribution and sale of the implements in large quantities; that the nation-wide sale and distribution of them is limited only by the supply of iron and steel obtainable for their manufacture; that they have made arrangements and contracts by which they can procure sufficient materials to manufacture at least 1,200 completed machines per year which would require the use of 12,000 of such wheels; that each machine will yield a net profit to plaintiffs of $50 or a total

of $60,000, the same being a conservative computation of such profits.

That since the 6th day of July, 1948, plaintiffs have made numerous requests of defendant to supply the written evidence of their oral contract; that at the time of each request defendant has stated to plaintiffs that he had not obtained a certified copy of his patent to file with the clerk of the district court of Osborne county, but that upon each of these occasions defendant has nevertheless requested and demanded of plaintiffs that they go ahead and manufacture and sell the implements in accordance with the provisions of their oral contract, and that plaintiffs have complied with all such requests.

That up until November 1, 1948, plaintiffs manufactured and sold 386 wheels in addition to those manufactured from material originally turned over to them by defendant, and that they now have on hand sufficient completed implements for which they have a ready sale and which will more than cover the minimum requirements of the oral contract for the year 1948; that they are constantly receiving inquiries and orders for implements; have received numerous requests for contracts for dealerships and sales in quantity; that they have interviewed a number of manufacturers of agricultural implements who offer to manufacture them at reasonable prices, but that such dealers, prospective purchasers and manufacturers require that plaintiffs exhibit to them written evidence of their right to manufacture and sell such implements prior to entering into any valid contract to manufacture or act as dealers; that plaintiffs have been unable to procure credit and adequate financing to the proper prosecution of the business without presenting written evidence of their right to proceed, and that without a written contract they will be unable to manufacture and sell implements substantially in excess of the minimum requirements of the oral contract.

That plaintiffs have done and performed everything required of them under the oral contract, but that defendant has wholly failed and refused and still fails and refuses to execute and deliver to them for their execution and retention a written contract embodying the terms and provisions of the oral contract entered into; that they are informed and believe that defendant's attorney did prepare such written contract and delivered it to defendant but that the latter

has retained the same and fails and refuses to execute it and furnish plaintiffs with a copy thereof.

That on October 26, 1948, one of the plaintiffs met defendant in Osborne at the office of the latter's attorney and at that time defendant and his attorney told him that plaintiffs were not big enough to handle the deal; that defendant.wanted to get someone to handle the whole United States; that in lieu of the contract entered into defendant would give plaintiffs a job of hauling and distributing in a small territory, and in effect told him that he, defendant, desired to and would withdraw from any obligation under the contract.

The petition further alleges that during the three months preceding the filing of the action defendant has been attempting and threatening to contract with persons other than plaintiffs for the manufacture, sale and distribution of the implements, including the device patented; that defendant will, unless enjoined, sell to persons other than plaintiffs the exclusive right to manufacture, distribute and sell the implements and his rights under the patent; that such purported sale would involve plaintiffs in lengthy and expensive litigation in order to obtain an accounting for the profits which would accrue to such other persons, all of which would result in great and irreparable damage and injury to plaintiffs and nullify all benefits which should be derived by them under the rights conferred by the oral contract; that they in good faith offer to comply with every obligation entered into by them under the oral contract; that noncompliance by defendant has caused and will continue to cause them irreparable damage and injury for which they would have no adequate remedy at law, and that defendant should be required to specifically perform his contract—that is to furnish plaintiffs with duly executed written evidence embodying the terms and provisions of the oral contract, to comply with the laws of Kansas for the registration of the patent, and to file an affidavit in connection therewith as required by law, to the end that plaintiffs may proceed to fulfill their obligations under the contract.

For their second cause of action plaintiffs incorporate all allegations of the first cause of action as above set forth, and further pray that in the event specific performance of the oral contract be refused then they recover damages for the nonfulfillment of such contract as follows: For time consumed, service given by them and their employees and expenses incurred in the furtherance of such project, as set forth in the first cause of action, in the sum of

$21,045 over and above the time given, services performed and expenses paid to meet the minimum requirements of the contract; that plaintiffs' profits, definitely ascertainable for the years 1949 and 1950 in case defendant would in good faith comply with his obligations under the contract, amount to $75,000, and this cause of action, in the event specific performance be denied, seeks damages in the total sum of $96,045.

For their third cause of action plaintiffs incorporate all of the allegations of the first and second causes of action and further allege that in the event specific performance be denied the benefits to be derived from the manufacture, distribution and sale of such implements, and the sale of the patent rights, will inure to the sole benefit of defendant, thus conferring upon him through and by means of the efforts of plaintiffs all benefits and profits from the efforts and cash outlay of plaintiffs in creating such market. That defendant will thus reap all the benefits from the service given by plaintiffs, including advertising, demonstrations as well as organization and agreements with manufacturers and distributors, all of the value of $96,045, and will result in the unjust enrichment of defendant to that amount and extent.

The prayer of the petition is that defendant be required specifically to perform his obligations under the oral contract; that he be enjoined from selling or attempting to sell to persons other than plaintiffs any of the rights, title and interest derived by them under the contract; that in the event specific performance be refused then that plaintiffs recover judgment from defendant in the sum of $96,045 as damages and that they have such other and further relief as the court shall deem just and proper in the premises.

The defendant filed a motion to require plaintiffs to make their petition more definite and certain the in following particulars:

1. By setting out in the first cause of action whether the patent or certified copy thereof was recorded in Osborne county, as required by law, or whether it was filed in any office in said county, and if so by setting out what office and the date of filing.

2. By setting out in the first cause of action whether defendant notified plaintiffs or either of them or their attorney that he would not give them an exclusive right to use said patent and if so the date thereof.

3. By setting out what was done by way of advertising and to itemize the expenses claimed for that and all other purposes.

On January 14, 1949, the matter came on for hearing and in open court plaintiffs confessed the first two grounds of this motion whereupon defendant withdrew the third ground.

Thereafter plaintiffs amended the original petition by alleging that a certified copy of the patent, the same being number 2,228,265, was filed in the office of the clerk of the district court of Osborne county on November 22, 1948, together with an affidavit, the latter being in substantial compliance with the requirements of law, and that it was on or about October 14, 1948, that defendant stated to plaintiff Hazen that he, the defendant, would not give to anyone the exclusive patent right covering said invention.

Following this amendment to the original petition the defendant demurred to each of the three causes of action for the reasons:

"1. That each separate cause of action does not state a cause of action against the defendant.

"2. Each said cause of action shows upon its face that the plaintiffs are barred from recovery by reason of the matters pleaded therein (a) the statutes of the state of Kansas pertaining to the sale or disposal of patent rights; and (b) the statute of frauds."

This demurrer was by the court overruled in all respects, following which defendant perfected this appeal.

In support of his argument that the demurrer should have been sustained as to each of the three causes of action appellant contends (1) the contract itself is void by virtue of our statutes pertaining to the sale of patent rights; (2) the contract being oral and not being able to be performed within one year is void under the statute of frauds; and (3) if there is any legal obligation whatsoever on the part of defendant the plaintiff has an adequate remedy at law and therefore is not entitled to specific performance.

Sections 57-101 and 103, G. S. 1935, pertaining to patent rights are as follows:

"It shall be unlawful for any person to sell or barter or offer to sell or barter any patent right, or any right which such person shall allege to be a patent right, in any county within this state, without first filing with the clerk of the district court of such county copies of the letters patent duly authenticated, and at the same time swearing or affirming to an affidavit before such clerk that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented; which affidavit shall also set forth his name, age, occupation and residence; and if an agent, the name, occupation and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and said clerk shall give a copy of said affidavit to the applicant, who shall exhibit the same to any person on demand." (§ 57-101.)

"Any person who shall sell or barter or offer to sell or barter within this state, or shall take any obligation or promise in writing for a patent right, or for what he may call a patent right, without complying with the requirements of this act, or shall refuse to exhibit the certificate when demanded, shall be deemed guilty of a misdemeanor, and on conviction thereof before any court of competent jurisdiction shall be fined in any sum not exceeding one thousand dollars, or be imprisoned in the jail of the proper county not more than six months, at the discretion of the court or jury trying the same, and shall be liable to the party injured, in a civil action, for any damages sustained." (§ 57-103.)

The appellant argues that the contract sued on is void between the parties and unenforceable on account of the fact the patent was not recorded as required by law at the time the alleged oral contract was entered into, and he relies on the early case of *Mason v. McLeod,* 57 Kan. 105, 45 Pac. 76, which held:

"As the purpose of the statute was to prevent and punish fraud, and noncompliance with its provisions declared to be a misdemeanor, contracts made by a vendor of patent-rights in violation of the statute are void as between the parties." (Syl. ¶ 2.)

The trouble with appellant's argument is that in that case it was the *vendor* of the patent right who was attempting to recover, whereas in the case before us it is the *vendee* and it is for the protection of a vendee that the statute was enacted. Syllabus ¶ 3 of the Mason case, *supra,* reads:

"The general rule that courts will not enforce contracts prohibited by statute, or allow the recovery of money or property paid or delivered in pursuance of them, does not apply to vendees of patent-rights for whose protection the statute was enacted."

And in the opinion it was said:

"More than that, the general rule that courts will not enforce contracts prohibited by statute or allow the recovery of money or property paid or delivered in pursuance of them does not apply to McLeod. He cannot be held to be *in pari delicto.* The duties prescribed by the statute are imposed upon the vendor of patent-rights, and are provided for the protection of purchasers. The law was not violated by McLeod. It placed no burdens upon him, and, having committed no wrong, he is not precluded from asking and obtaining relief."

This doctrine has been followed in each of our later cases on the subject, many of which are collected and discussed in *Sage v. Oil Country Specialties Mfg. Co.,* 138 Kan. 501, 27 P. 2d 542. We think this point needs no further discussion for it is certain that the statute placed the burden on defendant rather than plaintiffs, for whose

benefit it was enacted. We therefore hold that plaintiffs are not precluded from bringing the action merely because appellant had not complied with the statute at the time the oral agreement was made.

Appellant's next argument, that the agreement not being in writing is void under the statute of frauds, is based on the premise that since it could not be performed within one year it is therefore void and unenforceable and that performance, as alleged by plaintiffs, does not remove the bar. He further argues that plaintiffs cannot avail themselves of the argument that the oral agreement was merely an agreement to enter into a written agreement, which could be done within a few days, for the reason that by the very terms of the written agreement sought by plaintiffs the same could not be fully performed within one year and cites the general rule laid down in 49 Am. Jur., Statute of Frauds, § 6, p. 368, to the effect that an oral agreement to reduce to writing a contract which is within the scope of the operation of the statute of frauds, or to sign an agreement which the statute of frauds requires to be in writing, is invalid and unenforceable. It is conceded that this is the general rule for otherwise it would be possible to get around the statute and enforce those very agreements which the statute was enacted to prohibit.

But just what was the oral agreement in this case? The appellant promised and agreed to sell to plaintiffs the exclusive rights in the United States, during the life of such patent, to manufacture, sell and distribute the machines and implements in question, in return for which plaintiffs were to pay appellant certain royalties. Appellant further agreed that he would cause the oral agreement to be reduced to writing and to furnish plaintiffs with such written evidence of their rights to manufacture, sell and distribute the implements in question. Naturally this included the obligation and duty on the part of appellant to comply with the patent statute by filing a copy of his letters patent and the affidavit with the proper official. In this connection we note that he did file the copy of letters patent, together with the required affidavit, on the very day he was served with summons in this case, November 22, 1948. Touching appellant's point of inability of performance within one year, we fail to see how it can be said either the oral contract or the written contract could not be performed within that time—in

fact we think that on its face the petition shows that the oral agreement could have been fully performed within a few days, and with reference to the written contract contemplated by the parties it would really and actually be performed the instant it was executed, that is, the sale of the patent right would be completed. It is true that by its terms plaintiffs would be obligated in the future years to make the royalty payments to appellant, but such fact would merely be an incident to a carrying out of its terms. We do not agree with appellant that the contract could not be performed within a year within the meaning of the statute.

There is still another reason why we think the statute of frauds has no application to the facts as pleaded here and that is on the ground of equitable estoppel. In the early case of *Rose v. Hayden,* 35 Kan. 106, 10 Pac. 554, this court said that the statute of frauds was enacted to prevent fraud, not to foster or encourage it, and that the statute should be enforced in its spirit and not merely as to its letter. This doctrine has been adhered to down through the. years and further citation of authority is unnecessary. In 49 Am. Jur., Statute of Frauds, § 578, p. 885, the general rule is stated:

"The purpose and intent of the statute of frauds is to prevent fraud, and not to aid in its perpetration, and courts, particularly the courts of equity, will, so far as possible, refuse to allow it to be used as a shield to protect fraud, or an instrument whereby to perpetrate a fraud, or other instrument of fraud, wrong, or oppression. On the contrary, the courts will endeavor in every proper way to prevent the use of the statute of frauds as an instrument of fraud or as a shield for a dishonest and unscrupulous person, and under modern theory of practice, what a court of equity would do, law courts, under proper allegations, will no doubt also do. The courts do not tolerate the use of the statute of frauds to enable one to take advantage of his own wrong. As has been said, that principle of law or legislative enactment would be an anomaly which, while attempting to prevent fraud, would become an instrumentality for the perpetration of fraud."

Here the plaintiffs, in reliance on appellant's promises and agreement, went ahead and spent a great amount of time, money and effort in furtherance of the project. They have fully performed all duties and obligations incumbent upon them by the terms of the agreement and no valid reason for permitting appellant to take advantage of and rely upon his own breach as a defense has been advanced—in fact we fail to see any reason in equity and good conscience why appellant should be permitted to hide behind his own wrongdoing and rely upon it as a defense under the facts as

pleaded. In our opinion appellant is equitably estopped from relying upon the statute of frauds as a defense.

Appellant's third contention, that plaintiffs are not entitled to specific performance on account of having an adequate remedy at law, is based on the argument that the statute, § 57-103, *supra,* limits the liability of defendant in any event to *damages* sustained and he relies on the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), his theory being that since the statute expressly provides for liability in a civil action for damages any and all other forms of relief are excluded. We will not labor the question but it is sufficient to say that such doctrine has no application to the facts of this case if for no other reason than it is not the statute itself which creates the cause of action. The cause of action is created by the breach and nonperformance by appellant of the contract pleaded. While we of course have no way of knowing, and for present purposes are not concerned with what the proof may show, we cannot hold as an abstract proposition that plaintiffs are precluded from seeking specific performance, and neither are they precluded from pleading in the alternative as they did in the second and third causes of action.

Much more might be said concerning these matters but it would merely extend this already lengthy opinion. We have carefully noted and examined each and every argument and authority advanced by appellant but are convinced the trial court was correct in overruling the demurrer to each of the three causes of action, and the judgment is therefore affirmed.