No. 38,281

THE TEXAS COMPANY, a corporation, *Appellant*, v. CHARLES SLOAN, individually, and CHARLES SLOAN, as Guardian of the Estate of Lizzie Sloan, an Insane Person, *Appellees*.

(231 P. 2d 255)

Opinion filed May 12, 1951.

*Richard A. Hickey*, of Liberal, argued the cause, and *Collis R. Harner*, of Dodge City, *Rex A. Neubauer* and *Ronald N. Kaarbo*, both of Liberal, and *Kelsey Hutchinson*, of Tulsa, Oklahoma, were with him on the briefs for the appellant.

*J. S. Brollier*, of Hugoton, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This is an action for specific performance of an oral agreement to execute an oil and gas lease brought against the land owner individually and as guardian for his insane wife. The appeal to this court is from the order of the trial court sustaining defendant's demurrers to plaintiff's petition.

The petition as amended alleges in substance that the plaintiff, The Texas Company, a corporation, is duly authorized to do business in the state of Kansas; that the defendant Charles Sloan is a resident of Morton County, Kansas, and the duly acting and qualified guard-

ian of the estate of Lizzie Sloan, his wife, an insane person; that Charles Sloan individually was at all times mentioned the owner in fee of 240 acres of land (describing same) located in Morton County, Kansas; that about November 1, 1949, defendant Charles Sloan entered into an oral agreement with the plaintiff whereby he agreed for a stipulated bonus consideration of $2400 to execute an oil and gas lease to plaintiff to be effective March 27, 1950, upon the conditions contained in the form of lease attached to the original petition; that as part of their oral agreement defendant Charles Sloan agreed to sell to the plaintiff, in his capacity of guardian of the estate of his wife Lizzie Sloan, an oil and gas lease covering the inchoate interest of his wife in said land, and agreed that he would individually and as guardian of Lizzie Sloan execute the instrument evidencing said oil and gas lease. In consideration of the promises of defendant Charles Sloan, plaintiff agreed to pay the attorney fees and court costs incident to approval of said lease by the probate court of Stafford County, Kansas. Pursuant to said oral agreement, Charles Sloan as guardian of the estate of Lizzie Sloan, on December 14, 1949, filed his petition in the probate court of Stafford County to lease the inchoate interest of his wife for oil and gas purposes and, following the procedure required by law, defendant Charles Sloan as guardian on January 9, 1950, sold to plaintiff an oil and gas lease covering the inchoate interest of his ward for a bonus of $240 to be credited, according to the agreement of November 1, 1949, against the total stipulated bonus of $2400. The guardian's sale was on the same date duly confirmed by the probate court. In the verified petition filed by defendant guardian, in connection with the probate court approval of the sale, there appears this reference to the agreement of November 1, 1949, that defendant "as an individual is executing an oil and gas lease upon his interest in said land; that your petitioner further believes it will be to the best interest of said insane person to lease her inchoate interest in said real estate for oil and gas purposes in conjunction with the lease executed by your petitioner as an individual"; that the guardian further states: "That the purchaser of the lease hereby agrees to pay the attorney fees and court costs in connection with this proceeding" and also: "That it would be more advantageous to lease said property at private leasing than public leasing of said property, and that this can also be done more advantageously because of the fact that your petitioner must join in said lease individually."

In his report of sale, said guardian identifies the purchaser of the lease as this plaintiff. In the form of lease which was submitted to the probate court for approval, the lessors named therein are "Charles Sloan and Charles Sloan, as guardian of the Estate of Lizzie Sloan, an insane person", and the lessee named is The Texas Company.

In reliance upon its agreement with defendant Sloan, and in confidence that Sloan would perform his obligations thereunder, plaintiff, on January 3, 1950, purchased an oil and gas lease from the owner of the East Half of the Northeast Quarter (E½ of NE¼) of said section 31, thereby acquiring except for the land owned by defendant Sloan involved in this action, a full oil and gas leasehold estate throughout the entire section.

Charles Sloan, both individually and as guardian, and contrary to his agreement, now refuses to execute an oil and gas lease to this plaintiff and refuses to accept the $2400 bonus consideration provided in said contract, which plaintiff tendered into the district court of Morton County, Kansas, for the benefit and use of defendants according to the terms of the oral agreement; that plaintiff has fully complied on his part with terms of the oral agreement, and has paid the attorney fees and court costs in connection with the probate sale; that in reliance upon said agreement plaintiff company has made irrevocable expenditures and changed its position, and that it is obligated under the guardians lease to perform a valid and subsisting contract. That among obligations so assumed by plaintiff were those arising from the implied covenant of orderly development of lands covered by the lease, including necessity of drilling protection wells, all enforceable by law against said lessee, plaintiff herein. That plaintiff stands ready and has at all times been ready, willing and able to pay defendants the agreed bonus consideration of $2400.

Plaintiff further alleges that by defendant's fraudulent refusal to execute and deliver either the lease covering his vested fee interest or his wife's inchoate interest or both, plaintiff has suffered a detriment, and its leases in section 31 have depreciated in value; that plaintiff will not be able to complete its drilling program, all of which will result in a loss to plaintiff that cannot be compensated in damages; and that plaintiff has no other leases in the area to use for development within 640-acre drilling units.

By this action plaintiff seeks to compel defendants to execute and

deliver said oil and gas lease covering both the fee and the inchoate interests of Charles Sloan and his insane spouse.

Defendants first contend that the district court of Morton County had no jurisdiction to determine the issues as against the defendant Charles Sloan as guardian of the estate of Lizzie Sloan, an insane person, for the reason that the probate court of Stafford County was exercising jurisdiction over the guardian and the subject matter of the action, and invite our attention to G. S. 1949, 59-301, which provides that probate courts shall be courts of record and within their respective counties shall have original jurisdiction to appoint and remove guardians for minors and incompetent persons, and to make all necessary orders relating to their estates, to direct and control the official acts of such guardians, and to exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts.

We cannot agree with defendants' contention that the district court of Morton County was without jurisdiction over the guardian in this action. G. S. 1949, 59-2207 provides that any fiduciary of an estate may be sued in the district court of the county in which he was appointed or in which he resides. It is disclosed by the record that service of summons was had upon the guardian in his place of residence, Morton County, Kansas. This action is one for specific performance of an oral contract to execute and deliver an oil and gas lease as hereinbefore related. Insofar as the ward's interest in the property is concerned, the oil and gas lease was ordered executed and was approved by the probate court; this action is to compel delivery by the guardian of said lease already approved by the court.

The power of the probate court to deal with property of insane persons is not questioned here. The code contains a number of specific provisions (G. S. 1949, 59-1807, 59-1808) which safeguard the property interests of incompetents' estates. However, the guardian herein complied fully with these provisions of the probate code by filing his petition in the probate court of Stafford County for authority to lease the inchoate interest of his insane wife in the land in question for oil and gas purposes; on January 9, 1950, pursuant to an order of the probate court made on the same day directing him to let and lease the ward's inchoate interest in the real property for oil, gas and mineral purposes, he caused the leasehold estate to be appraised by three disinterested persons and thereafter on the same day sold at private sale said inchoate in-

terest of his ward in and to the property described for the sum of $240, and did execute to the Texas Company an oil and gas lease of his ward's inchoate interest on the terms and conditions set forth in the court's order. The oil and gas lease attached to the plaintiff's petition was submitted for the approval of the court and contained all the provisions and terms ordered and directed by the court. Said sale was approved and confirmed and the lease was approved by the court.

The procedure in the probate court having been complied with and the report of sale approved, there was nothing further to be done in the probate court insofar as this action is concerned, and the action was properly brought in the district court of Morton County for specific performance to compel delivery of the oil and gas lease approved by the probate court.

Where statutory procedure for sale of an insane ward's real estate was complied with by guardian's petition for sale, court's order for sale, appraisement, and report of sale and approval by the court, the purchasers acquired an enforceable equitable title. (*Capelli v. Bennett,* 357 Mo. 421, 209 S. W. 2d 109)

We held in *Cockins v. McCurdy,* 40 Kan. 758, 20 Pac. 470:

"An administrator having sold real estate belonging to the estate, said sale having been confirmed and a deed ordered and executed, and left in the hands of an ex-probate judge, the purchaser at said sale, or his assignee, was entitled to the deed on the payment of the purchase money, without reference to the intention of the administrator. The administrator could not impose any other condition to the delivery of the deed except the payment of the purchase money."

In the instant case, the purchase price of $240 has been tendered into court. We also held in *Bradford v. Larkin,* 57 Kan. 90, 45 Pac. 69:

". . . A sale of the interests of both minors was ordered to be made, and was made for an adequate consideration. This sale, upon examination of the court, was duly confirmed. These steps were taken in a proceeding to which the plaintiff in error was a party, and the court having jurisdicition, they are certainly sufficient to convey the equitable title of both minors. The purchaser, having obtained the equitable title, is entitled to a conveyance of the legal title, and the right to the conveyance having become complete, it may be made at any time."

Defendant contends that the guardian had no power or authority to contract either orally or in writing with reference to the ward's property. However, this matter was decided in *Guy v. Hansow,* 86 Kan. 933, 122 Pac. 879, where we said at page 936 of the opinion:

"The contract of the guardian to sell the minor's interest was of course ineffectual, but the sale authorized and approved by the probate court was binding upon them and the defendant is to receive not only what he contracted for but all the interest the minors have in the land."

It would serve no useful purpose to labor this question further. We conclude that the district court of Morton County had jurisdiction of the parties and the petition as amended states sufficient facts to constitute a cause of action against the guardian.

Defendants next contend that the demurrers to plaintiff's amended petition were properly sustained for the reason that it appears from the face of the petition this was an oral contract to execute an oil and gas lease for a term of ten years on the real estate described, to commence at a future date, March 27, 1950, and that such a contract is in violation of the statute of frauds, G. S. 1949, 33-106, which provides:

"No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

Conceding that such a contract is within the statute of frauds, it is no answer to the contention advanced by plaintiff supporting his theory that the demurrers should not have been sustained. The amended petition presents a state of facts, admitted by the demurrers, by which the defendant Charles Sloan is equitably estopped by his actions in his individual capacity and as guardian from invoking the statute of frauds. It is alleged that Charles Sloan, as guardian, in performance of his obligations under the oral agreement, filed his verified petition in the probate court of Stafford County, stating that the described property had some indication of value for oil and gas purposes and that he as an individual was executing an oil and gas lease to plaintiff on the land and that it was to the best interests of his insane ward to lease her inchoate interest in the property in conjunction with the lease to be executed by him as an individual; that the oil and gas lease was for a term of ten years and as long thereafter as oil and gas or either of them were found in paying quantities; that the plaintiff agreed to pay the expenses including attorney fees and court costs in such proceed-

ings; that subsequent thereto the defendant Sloan filed his verified report of sale in the probate court stating further that he did pursuant to the court's order on January 9, 1950, sell at private sale the inchoate interest of Lizzie Sloan in and to the oil, gas and mineral rights in the described property to The Texas Company, plaintiff herein, for the sum of $240, which he received; that he had executed to the plaintiff an oil and gas lease on the inchoate interest of Lizzie Sloan upon the terms and conditions set forth in the court's order; and requesting the confirmation of such sale by the court and authorization to deliver to the plaintiff, The Texas Company, the lease so executed to the purchaser, upon payment of the purchase price; that said report of sale and the oil and gas lease were approved by the probate court; that in further reliance upon the oral agreement, the plaintiff paid the court costs and attorney fees in the probate court as had been agreed upon. Plaintiff in further reliance upon said oral agreement and the acts and conduct of defendants has made irrevocable expenditures and changed its position in that it has obligated itself to perform a valid and subsisting contract under the oil and gas lease executed by the guardian. Moreover, the petition alleges that under the conditions existing at the times mentioned, it was economically feasible and legally permissible to develop lands herein only in 640-acre units; that at the time of the agreement in question, plaintiff contemplated formation of a 640-acre drilling unit comprising all of section 31 for the purpose of oil and gas development; that the defendants' land was a part of said section 31; that plaintiff in reliance upon the acts and conduct of defendants secured and purchased oil and gas leases covering the remainder of said section from other owners, and expended and paid a considerable sum of money therefor; that the land obtained by plaintiff in conjunction with the land of these defendants constituted an entire section necessary for the drilling of oil and gas; that there are no other lands in the vicinity which the plaintiff can secure to complete the 640-acre tract for a drilling unit without the land of the defendants herein; that unless the oral agreement with defendants herein be specifically performed, the value of the leases will be materially reduced and plaintiff will be unable to complete its drilling program resulting in a loss to plaintiff which cannot be compensated in damages.

In short, it is alleged that plaintiff was led by the actions and

conduct of defendants to perform its part of the oral agreement and to expend sums of money, obligate itself for future action and change its position to its detriment. In such a situation, to permit defendants to invoke the statute of frauds would be to permit use of that instrument for the perpetration of fraud. Only recently we stated in *Hazen v. Garey*, 168 Kan. 349, 359, 212 P. 2d 288:

". . . In the early case of *Rose v. Hayden*, 35 Kan. 106, 10 Pac. 554, this court said that the statute of frauds was enacted to prevent fraud, not to foster or encourage it, and that the statute should be enforced in its spirit and not merely as to its letter. This doctrine has been adhered to down through the years and further citation of authority is unnecessary. In 49 Am. Jur., Statute of Frauds, § 578, p. 885, the general rule is stated:

" 'The purpose and intent of the statute of frauds is to prevent fraud, and not to aid in its perpetration, and courts, particularly the courts of equity, will, so far as possible, refuse to allow it to be used as a shield to protect fraud, or an instrument whereby to perpetrate a fraud, or other instrument of fraud, wrong, or oppression. On the contrary, the courts will endeavor in every proper way to prevent the use of the statute of frauds as an instrument of fraud or as a shield for a dishonest and unscrupulous person, and under modern theory of practice, what a court of equity would do, law courts, under proper allegations, will no doubt also do. The courts do not tolerate the use of the statute of frauds to enable one to take advantage of his own wrong. As has been said, that principle of law or legislative enactment would be an anomaly which, while attempting to prevent fraud, would become an instrumentality for the perpetration of fraud.' "

In view of what has been said, we fail to see any good reason in equity and good conscience why defendant Charles Sloan, acting in his individual capacity or as guardian, should be permitted to hide behind his own wrongdoing and rely upon it as a defense under the facts as pleaded and hereinbefore related. It is our opinion that defendants are equitably estopped from relying upon the statute of frauds as a defense.

The judgment of the lower court is reversed and the case remanded with directions to overrule each of the demurrers filed by the defendants herein.

HARVEY, C. J., dissents.