No. 39,151

THE TEXAS COMPANY, a Corporation, *Appellee,* v. CHARLES SLOAN, Individually, and CHARLES SLOAN, as Guardian of the Estate of LIZZIE SLOAN, an Insane Person, *Appellants.*

(267 P. 2d 919)

Opinion filed March 6, 1954.

*Chas. Vance,* of Liberal, argued the cause, and *J. S. Brollier* and *Paul A. Wolf,* both of Hugoton, and *H. Hobble* and *Chester Nordling,* both of Liberal, were with him on the brief for the appellants.

*Richard A. Hickey,* of Liberal, argued the cause, and *Rex A. Neubauer* and *Ronald N. Kaarbo,* both of Liberal, and *Collis R. Harner,* of Dodge City, and *Kelsey Hutchinson,* of Tulsa, Okla., were with him on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is a second appeal arising from an action to compel specific performance of an oral agreement for the execution of an oil and gas lease. The first appeal was from a ruling of the trial court sustaining a demurrer to the amended petition and on review that ruling and judgment was reversed. See *Texas Co. v. Sloan,* 171 Kan. 182, 231 P. 2d 255. Thereafter answers were filed by the defendants, replies were filed by the plaintiff and a trial followed. At its conclusion the trial court made findings of fact and conclusions of law later mentioned and in accordance therewith rendered judgment in favor of the plaintiff. Defendant's

motion for a new trial was denied and an appeal to this court was perfected.

A review of the allegations of the amended petition, on which the action was tried, was made in the opinion on the first appeal and will not be repeated here, reference being made to that opinion therefor. We here note that the record as abstracted does not disclose when the action was commenced.

In his amended answer in his individual capacity, filed September 12, 1951, defendant Sloan admitted corporate status of the plaintiff; that he was guardian of the estate of Lizzie Sloan; that he was the owner of the involved real estate subject only to an oil and gas lease later mentioned and that plaintiff had paid attorney's fees and costs in the probate court of Stafford County, Kansas, in connection with proceedings to sell an oil and gas lease on the inchoate interest of Lizzie Sloan in that real estate. He further answered alleging his version of negotiations for an oil and gas lease and that he understood the bonus consideration of $2,400 would be net to him; that he never saw or knew of the contents of the lease submitted by plaintiff to him for execution until it was sent to him by Edgar R. Barnes in a certain letter; that plaintiff was the owner of a valid oil and gas lease on the lands at all times between March 27, 1940, and March 27, 1950, and could have developed thereunder; that the proposed new lease was on a different form and he had never agreed to execute it. An allegation as to operations under orders of the State Corporation Commission need not be noted. He further alleged that he had offered to refund to plaintiff the attorney's fees and court costs it paid in connection with proceedings in the Stafford county probate court. He also alleged that the oil and gas lease submitted for execution did not constitute a renewal of the then existing lease and contained terms and provisions to which he had never agreed, which he specified in six particulars. He further alleged he had never agreed to execute any lease containing any provision for the unitization of gas, or any lease that provided for a bonus consideration of less than $2,400 net to him and that no tender of that amount had been made to him and that he had been tendered only the sum of $2,160. He further answered that the oral agreement alleged in the amended petition, if made, was unenforceable by reason of the statute of frauds, and that the terms of the agreement were for a lease in the future the terms of which were not agreed upon and the agreement

was executory, unilateral, lacked mutuality, and could not be enforced.

In his amended answer as guardian filed September 12, 1951, Sloan made the same admissions as in his individual answer, and alleged that Lizzie Sloan died March 13, 1950, and a copy of an order of the probate court attached shows he was discharged as her guardian on June 7, 1951; that the court had no jurisdiction of the defendant as guardian; that he did not read or know of the content of instruments filed in the probate court of Stafford county; that a copy of the oil and gas lease attached to the petition was not attached to the report of sale when he signed it; that he had never agreed to sell the plaintiff an oil and gas lease on the inchoate interest of Lizzie Sloan in the lands and if he did, which he denied, then the agreement was to make a contract at a future date, was executory, unilateral, lacked mutuality, and could not be enforced.

Plaintiff's replies to the two answers contained certain admissions, denied generally and pleaded at length concerning the new matter alleged in the answers.

Upon the issues joined a trial was had on September 23, 1952, at the conclusion of which the trial court took the case under advisement and for the making of findings of fact and conclusions of law, which were later filed with the clerk. Later, as the result of motions made therefor, the trial court made amended findings of fact and conclusions of law and on April 8, 1953, rendered judgment in accordance with its amended findings and conclusions and ordered the defendants to execute a lease identical in form with that attached to the petition, and on their default that the sheriff of Morton county execute the lease and if so executed that it have the same force and effect as if executed by the defendants in their own proper persons and capacities. The defendant Charles Sloan then filed his motion for a new trial alleging as grounds thereof only erroneous rulings of the court, that the decision was contrary to the evidence and law, and newly discovered evidence. On the hearing no new evidence was presented. The trial court denied the motion and Charles Sloan perfected his appeal to this court where he specifies as error the court's ruling on his demurrer to plaintiff's evidence, in its conclusions of law, in its findings of fact as not supported by the evidence, in its ruling denying his motion for judgment on the findings, in its rendering judgment for the plaintiff, and in its overruling his motion for a new trial.

Notwithstanding the numerous specification of errors and a statement of questions involved, in his brief appellant presents two main contentions: (1) that there was no express oral agreement to execute an oil and gas lease and an agreement by inference cannot be enforced; and (2) that if an oral agreement was made it was not enforceable.

Before discussing the contentions made by the appellant and to avoid any inference the matter has been overlooked, we point out that the record discloses without dispute that the title to the involved real estate was in Charles Sloan and that his wife, Lizzie Sloan, an insane person, had only an inchoate interest therein. The effect of her death does not appear to have been discussed at the trial and neither appellant nor appellee now presents any substantial question arising from the fact that Lizzie Sloan died on March 13, 1950, and that her inchoate interest ceased at her death. We do note the statement of appellant in his brief that since she is dead, he does not consider it very important that a guardian *ad litem* was not appointed to represent her in the probate court proceedings As questions inherent in the above state of facts are not presented, we shall not consider that matter further.

Taking up consideration of the two contentions made by the appellant we note that on the first appeal it was held that the amended petition, on which the action was later tried, stated a cause of action. The allegations of the amended answers put in issue the truthfulness of the essential allegations of the amended petition. It follows that if the evidence adduced by the plaintiff satisfied the burden of proof which was on it, the plaintiff was entitled to judgment. After having heard the evidence, the trial court made long and detailed findings of fact which will not be set forth at length. The trial court found that Charles Sloan owned the involved 240 acres of land; that his wife, Lizzie, was an incompetent and he was her guardian at all times involved and until her death, and that plaintiff held an oil and gas lease on the land, executed by Sloan individually and as guardian which expired March 27, 1950, and that the probate proceedings to subject the wife's inchoate interest to the presently involved lease and the previous lease had been handled by E. R. Barnes, an attorney. The second, third and fourth findings detail the negotiations for the lease in question, including the procuring of authority from the probate court for the guardian to join therein to cover the inchoate interest of Lizzie Sloan. The fifth finding is that the plaintiff had procured oil and

gas leases on other lands in the section other than the Sloan land. The sixth finding is immaterial here. The seventh finding is that plaintiff, in reliance upon its agreement with Sloan, paid court costs and attorney's fees incident to, the guardian's lease. The eighth finding, and on which appellant places great reliance, reads:

"The Court determines from the testimony that plaintiff and Sloan agreed, by inference, that said oil and gas lease would be executed by Sloan on the date the sale was confirmed by the Probate Court, on January 9, 1950."

The trial court's conclusions of law were:

I.

"The Court finds, from the preponderance of the evidence that on December 3, 1949, the defendant Sloan, individually and as Guardian for his insane wife, orally agreed to deliver to plaintiff an oil and gas lease upon the terms and conditions set forth in the lost form, which was identical to the form attached to plaintiff's amended petition as Exhibit 'C', with the possible exception of the words 'January, 1950', representing the date of said lease, about which there is some uncertainty, however, it was agreed said date was to be the date the lease was approved by the Probate Court of Stafford County, Kansas, upon the stipulated bonus in the amount of $2400.00."

II.

"The report of sale executed and verified by Mr. Sloan as Guardian, wherein he represents to the court that he has executed an oil and gas lease, as alleged therein, and as set out in his original petition filed in the Probate Court asking for such permission, acts as an estoppel, preventing the defendant Sloan from denying the oral agreement, including the terms embodied therein, to the detriment of The Texas Company. (*The Texas Co. vs. Sloan*, 171 Kans. 182.)"

III.

"The plaintiff paid the attorney's fees and court costs in connection with the Guardian's sale of the oil and gas lease, and has tendered the purchase price of said oil and gas lease into court, and has also made tender of subsequent delay rentals under the terms of said oil and gas lease, and has thus performed all of the duties incumbent upon the plaintiff in connection herewith. The plaintiff has existing valid oil and gas leases covering all of Section 31-34-39 other than the Sloan land, and it would be a detriment to the plaintiff to operate on less than a section basis, and inasmuch as the amount of production under any given well is uncertain and highly speculative, it is impossible, with any degree of certainty whatsoever, to determine the amount of damages that the plaintiff would sustain.

"The plaintiff is therefore entitled to a decree in specific performance."

Appellant contends that there was no evidence of an express oral agreement to execute an oil and gas lease and an agreement by inference cannot be enforced and he places great weight on the eighth finding of fact which is quoted above. That finding does not

cover the matter of an oral agreement to lease, but merely the date the agreed lease was to be executed. In the first conclusion of law, which is more one of fact than of law, the trial court specifically finds from the preponderance of evidence that Sloan individually and as guardian did agree to deliver the lease. An examination of the evidence contained in the abstract and counter-abstract discloses ample evidence to sustain all the findings of fact, as well as the facts included in the conclusions of law, and appellant's contention there was no evidence of an express agreement, and that it is only inferred there was such an agreement, cannot be sustained.

Appellant also contends that even if an oral agreement to execute the lease was made it was unenforceable. Notwithstanding his statement of his contention, in his argument appellant dwells at length on the fact no oral agreement was proved. The trial court found to the contrary, as is shown above. In our opinion on the former appeal the question of the contract being unenforceable under the statute of frauds was considered and decided insofar as the allegations of the amended petition were concerned. At the trial the proof showed and the trial court found that the allegations of fact there considered had been established. We are satisfied with what is said on the question in our former opinion and shall not discuss it further.

Incidentally mentioned in his argument on the above contentions but not separately discussed are the following which are included in his statement of the questions involved. He contends he cannot be estopped by the statement made in his application to the probate court that he had made a lease on his own interest, and because in his report to that court he stated he had leased to The Texas Company. That matter was considered and decided in the first appeal.

He also complains of the finding that plaintiff could not be compensated in damages, the complaint turning to a considerable extent on his version of the testimony. We are satisfied with the trial court's third conclusion of law and the facts stated therein.

Appellant also complains that the evidence to support the finding of an oral contract and to warrant specific performance must have been clear, strong and convincing, and that the trial court made its finding only on a preponderance of the evidence. As has been often held the question whether the evidence is clear, strong and convincing is for the trial court, not this court. See *Schuler v. Rehberg,*

145 Kan. 176, 179, 64 P. 2d 571; *Jones v. Davis,* 165 Kan. 626, syl. ¶ 2, 197 P. 2d 932; and *In re Estate of Spark,* 168 Kan. 270, 275, 212 P. 2d 369. Where a trial court determines the weight it will put on evidence, especially where there is conflict therein, in the absence of a showing to the contrary, and there is none shown here, we can only conclude that it applied the correct test. See *Klein v. Blackshere,* 113 Kan. 539, 541, 215 Pac. 315.

Consideration of the record and the specification of errors leads to the conclusion the judgment of the trial court should be and it is affirmed.