No. 47,877

THE DECATUR COOPERATIVE ASSOCIATION, a Corporation, *Appellant,*
v. FRANKLIN URBAN, *Appellee.*

(547 P. 2d 323)

Opinion filed March 6, 1976.

Stan Morgan, of Wolfe and Morgan, of Oberlin, argued the cause and was on the brief for the appellant.

Robert J. Lewis, Jr., of Lewis, Lewis and Beims, of Atwood, argued the cause and was on the brief for the appellee.

David W. Dewey, of Wichita, was on the brief amicus curiae for the Wichita Bank For Cooperatives.

The opinion of the court was delivered by

HARMAN, C.: This action was brought to obtain possession of 10,000 bushels of wheat allegedly purchased under an oral contract, or alternatively, for damages for failure to deliver the wheat. The primary issue is whether the alleged seller, a farmer, was a "merchant" within the meaning of the uniform commercial code so as to remove the oral contract from operation of the statute of frauds. A secondary issue is whether the seller was equitably estopped from relying on the statute of frauds as a defense to an action on the oral contract.

Appellant, The Decatur Cooperative Association, commenced this action August 24, 1973, by filing its petition against appellee, Franklin Urban, alleging an oral purchase of 10,000 bushels of wheat from Urban on July 26, 1973, at $2.86 per bushel and a repudiation by him of the agreement on August 14, 1973. Other facts were alleged which will be noticed later. Urban answered, denying the alleged purchase and raising the defense of the statute of frauds. Urban also moved for summary judgment.

For the purpose of ruling on the request for summary judgment the parties stipulated to the facts, which we summarize.

Appellant is a corporation which has been in existence since 1953. It owns and operates a grain elevator and its principal

business is the purchasing of wheat and other grains from area farmers which it markets to larger regional elevators and grain dealers. During the fiscal year ending March 31, 1973, appellant purchased grain from about 500 farmers and sold grain to four regional elevators.

Appellant has a well-established policy of never speculating on the price of grain. Therefore, as soon as it purchases grain from a farmer or farmers amounting to one train carload or about 2000 bushels, it places a phone call to a terminal elevator and orally sells the grain to that elevator at the prevailing price. Thereafter, a written confirmation of sale is sent by the terminal elevator to the cooperative. This procedure is a well-established and well-known method of handling and marketing grain in Decatur county, Kansas. Appellant has a general manager and an assistant manager to run its daily operations, each of whom is authorized to enter into sales contracts on behalf of the cooperative.

Appellee Urban is a resident of Decatur county and was a member of the cooperative throughout the year 1973. He has been engaged in the wheat farming business for about twenty years. He owns about 2,000 acres of his total farmed acreage of 2,320 acres. About 1,200 acres are broken out and farmable while the remaining acreage is unbroken and devoted to pasture. In the year 1974 appellee had approximately 500 acres sown in wheat. Appellee also owns a cow herd of about 200 head. He is engaged solely in the farming business, although he has in the past done some custom harvesting of wheat and other grains. He has sold wheat and other grains, which he raises, to the appellant cooperative and to other elevators in the area since 1966 and has sold livestock through area sale barns.

On July 26, 1973, appellee was in St. Francis, Kansas, on his way to Colorado to do some custom wheat harvesting. While in St. Francis he placed two phone calls to the cooperative. On the first call he requested to speak to the assistant manager but was told he was not available. Later that afternoon appellee placed a second call to the cooperative office and did reach the assistant manager. As a result of this second call, appellant contends the parties entered into an oral contract whereby appellee agreed to sell to the cooperative 10,000 bushels of wheat at $2.86 per bushel, to be delivered on or before September 30, 1973. Appellee denies that any contract of sale was made during this phone call and he has never admitted by pleading, testimony or otherwise that a sale

174

agreement was reached during the call. The total cash value of the wheat alleged to have been sold was $28,600.00.

During the phone conversation there was discussion of a written memorandum of sale to be prepared and sent to appellee later. It is appellant's practice to send a signed written confirmation of sale to the seller immediately after oral conversations and appellant did in fact send such a confirmation to appellee. This confirmation was signed by appellant's assistant manager and was binding as against appellant. Appellee received the confirmation within a reasonable time, read it, and gave no written notice of objection to its contents within ten days after it was received.

Early in the morning of July 27, 1973, in reliance on the alleged oral contract of sale, appellant placed a phone call to Far-Mar-Co., a regional terminal elevator in Kansas City, Missouri, and sold the wheat for $3.46 per bushel, the cooperative to pay freight and other charges. During the latter part of July and early part of August of 1973, the price of wheat rose substantially.

On August 13, 1973, appellee notified appellant that he would not deliver the wheat. The price of wheat at the cooperative on that date was $4.50 per bushel.

Upon the foregoing the trial court made the following findings:

"1. The Court finds that under the provisions of K. S. A. 84-1-206 that the amount of the contract price exceeded $5,000.00 and that under that statute the oral agreement was void for lack of being signed by the parties to be bound thereby to-wit, the defendant, and that the supposed contract is void under the provisions of that statute.

"2. The term 'Merchant' is defined under provisions of K. S. A. 84-2-104 and it is the finding and conclusion of this Court that such term is not applicable to the parties to this action, particularly the defendant, Franklin Urban.

"3. The Court also finds that the fact that a farmer, whether he be large, intermediate or small is not a merchant under the facts of this case and that by reason thereof the provisions of K. S. A. 84-2-201 are not applicable to this case in so far as the defendant is concerned."

The court sustained Urban's motion for summary judgment and Decatur Cooperative has appealed.

Appellant first asserts the trial court erred in gratuitously determining in its first finding that K. S. A. 84-1-206 was applicable to this case and voiding the contract on that ground. Appellee concurs in this assertion, and correctly so. This statute provides:

"Statute of frauds for kinds of personal property not otherwise covered. (1) Except in the cases described in subsection (2) of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some

writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent.

"(2) Subsection (1) of this section does not apply to contracts for the sale of goods (section 84-2-201). . . ."

The official UCC comment following this statute states:

*"Purposes:*

"To fill the gap left by the Statute of Frauds provisions for goods (Section 2-201), securities (*Section 8-319*), and *security interests (Section 9-203).* . . ."

Thus section 1-206 is expressly inapplicable to contracts for the sale of "goods" encompassed by K. S. A. 84-2-201. "Goods" are defined in K. S. A. 84-2-105 as ". . . all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 84-2-107)." As pertinent here the purpose of K. S. A. 84-1-206 is to include within its provisions sales of intangibles and choses-in-action which are not subject to the provisions of 2-201 and there is no overlapping between the two statutes (see discussion in 3 Bender's Uniform Commercial Code Service, Duesenberg—King, Sales & Bulk Transfers, § 2.02 [1], pp. 2-10 and 2-11). Wheat is encompassed within the code definition of "goods" and the trial court erred in applying 84-1-206 to the case at bar. We turn now to the more difficult issue—the court's invalidation of the alleged oral contract pursuant to our statute of frauds applicable to certain contracts for the sale of goods.

K. S. A. 84-2-201 provides in pertinent part:

*"Formal requirements; statute of frauds.* (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements

of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received."

Under subsection (2) a "merchant" is deprived of the defense of the statute of frauds as against an oral contract with another merchant if he fails to object to the terms of a written confirmation within ten days of its receipt. The issue presently here is whether or not appellee is, under the facts, also a "merchant". If he is not, section 2-201 acts as a bar to the enforcement of the alleged contract. K. S. A. 84-2-104 contains the following definitions:

"(1) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

. . . . . . . . . . . . .

"(3) 'Between merchants' means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."

The official UCC comment states:

"*Purposes:*

"1. This Article assumes that transactions between professionals in a given field require special and clear rules which may not apply to a casual or inexperienced seller or buyer. It thus adopts a policy of expressly stating rules applicable 'between merchants' and 'as against a merchant,' wherever they are needed instead of making them depend upon the circumstances of each case as in the statutes cited above. This section lays the foundation of this policy by defining those who are to be regarded as professionals or 'merchants' and by stating when a transaction is deemed to be 'between merchants.'

"2. The term 'merchant' as defined here roots in the 'law merchant' concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both and which kind of specialized knowledge may be sufficient to establish the merchant status is indicated by the nature of the provisions. . . ."

From the foregoing it appears there are three separate criteria for determining merchant status. A merchant is (1) a dealer who deals in the goods of the kind involved, or (2) one who by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction, even though he may not actually have such knowledge, or (3) a principal who employs an agent, broker or other intermediary who by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction (see 1 Anderson, UCC, 2d ed., § 2-104:4, p. 220). Professionalism, special knowledge

and commercial experience are to be used in determining whether a person in a particular situation is to be held to the standards of a merchant.

The few courts which have considered the question whether a farmer, with experience similar to that in the case at bar, is a merchant under the statute of frauds provision in the UCC have divided on the issue. Cases holding that such a person is a merchant include *Campbell v. Yokel,* 20 Ill. App. 3d 702, 313 N. E. 2d 628; *Sierens v. Clausen,* 60 Ill. 2d 585, 328 N. E. 2d. 559; and *Ohio Grain Co. v. Swisshelm,* 69 O. O. 2d 192, 40 Ohio App. 2d 203, 318 N. E. 2d 428. Cases contrariwise are *Cook Grains v. Fallis,* 239 Ark. 962, 395 S. W. 2d 555; and *Loeb and Company, Inc. v. Schreiner,* 294 Ala. 722, 321 So. 2d 199.

In our opinion the facts here disclose that appellee neither "deals" in wheat, as that term is used in 2-104, nor does he by his occupation hold himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction. The concept of professionalism is heavy in determining who is a merchant under the statute. The writers of the official UCC comment virtually equate professionals with merchants—the casual or inexperienced buyer or seller is not to be held to the standard set for the professional in business. The defined term "between merchants", used in the exception proviso to the statute of frauds, contemplates the knowledge and skill of professionals on each side of the transaction. The transaction in question here was the sale of wheat. Appellee as a farmer undoubtedly had special knowledge or skill in raising wheat but we do not think this factor, coupled with annual sales of a wheat crop and purchases of seed wheat, qualified him as a merchant in that field. The parties' stipulation states appellee has sold only the products he raised. There is no indication any of these sales were other than cash sales to local grain elevators, where conceivably an expertise reaching professional status could be said to be involved.

We think the trial court correctly ruled under the particular facts that appellee was not a merchant for the purpose of avoiding the operation of the statute of frauds pursuant to K. S. A. 84-2-201 (1) and (2).

This brings us to the second point of the appeal—not ruled upon by the trial court—whether appellee is equitably estopped to assert the statute of frauds as a defense. K. S. A. 84-1-103 provides that certain principles of law and equity, including estoppel, unless

displaced by the particular provisions of the uniform code, shall supplement its provisions.

Appellant pleaded in its petition, and the parties stipulated the facts pertinent thereto, its immediate disposition of the wheat it thought it had purchased from appellee and contends that because appellee knew, or reasonably should have known because of his special relationship as a member of appellant, that it would sell the wheat immediately, he is estopped to assert the statute of frauds as a defense to enforcement of the oral contract.

In discussing the issue a distinction should be made between the concepts of equitable estoppel and promissory estoppel. In *Marker v. Preferred Fire Ins. Co.*, 211 Kan. 427, 506 P. 2d 1163, we stated:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. This is called the doctrine of promissory estoppel.

"Promissory estoppel differs from ordinary 'equitable' estoppel in that the representation is promissory rather than to an existing fact." (Syl. ¶¶ 2 & 3.)

Courts have taken differing positions as to whether a party may be equitably estopped to assert the statute of frauds as a defense (see anno.: Promissory Estoppel As Basis For Avoidance of Statute of Frauds, 56 ALR 3d 1037). One line of cases holds that to allow the concept of estoppel to preclude assertion of the statute of frauds as a defense to an oral contract would defeat the purpose of the statute. These decisions take the position that promissory estoppel may not be used to defeat the statute of frauds in any case, or at least in any situation where the policy of the statute would be frustrated (see anno., supra, § 4 [*a*], p. 1052).

A substantial number of courts, however, hold that the doctrine of promissory estoppel may render enforceable any promise upon which the promisor intended, or should have known, that the promisee would act to his detriment, and which is indeed acted upon in such a manner by the promisee, where application of the statute of frauds to that promise would thus work a fraud or a gross injustice upon the promisee (anno., supra, § 6 [*a*], pp. 1060-1063; 73 Am. Jur. 2d, Statute of Frauds, § 565, pp. 202-204). Courts in this line of cases bottom their reasoning on the general equity principle that the statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and a court of equity will not ordinarily permit its use as a shield to protect fraud or to

enable one to take advantage of his own wrong. This court has long been committed to the principles enunciated in the last sentence and on that basis has applied the doctrine of estoppel to cases wherein the statute of frauds would otherwise be applicable as a defense (*Rose v. Hayden,* 35 Kan. 106, 10 Pac. 554; *Hazen v. Garey,* 168 Kan. 349, 212 P. 2d 288; *Texas Co. v. Sloan,* 171 Kan. 182, 231 P. 2d 255).

Before the doctrine of promissory estoppel can be invoked in a case involving the statute of frauds the promisee must first show by competent evidence that a valid and otherwise enforceable contract was entered into by the parties (3 Williston on Contracts [3d ed., Jaeger], § 533A, pp. 802-803). The conduct of the promissor must be something more than a mere refusal to perform the oral contract, since any party to an oral contract unenforceable under the statute of frauds has that right, and the exercise of the right of nonperformance is no more a fraud than a breach of any other contract (37 CJS, Frauds, Statute of, § 247, p. 755). And the promisee must show the facts of the case and the conduct of the promisor justifying application of the doctrine. We further outlined the elements of promissory estoppel in *Marker* in this fashion:

"In order for the doctrine of promissory estoppel to be invoked the evidence must show that the promise was made under circumstances where the promisor intended and reasonably expected that the promise would be relied upon by the promisee and further that the promisee acted reasonably in relying upon the promise. Furthermore promissory estoppel should be applied only if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice." (Syl. ¶ 4.)

"The vital principle [of estoppel rendering the statute of frauds inoperative] is that he who by his language or conduct leads another to do, upon the faith of an oral agreement, what he would not otherwise have done, and changes his position to his prejudice, will not be allowed to subject such person to loss or injury, or to avail himself of that change to the prejudice of such other party" (Williston, *supra,* § 533A, p. 800).

Recapitulating, appellant's theory is it changed its position in reliance upon appellee's conduct; that appellee was or reasonably should have been aware of its practices in the particular type of situation; that appellant bound itself in the transaction and it would be unjust and a fraud upon appellant to permit appellee to speculate and profit on a risen market at appellant's expense. From the facts pleaded and placed before the trial court by stipulation it is clear

appellant was entitled to invoke the doctrine of promissory estoppel so as to bar application of the statute of frauds and to have an evidentiary hearing upon disputed matters in connection with that issue. The summary judgment denying that right was improperly entered and it must be and is hereby reversed and the cause remanded for further proceedings accordingly.

Reversed and remanded.

APPROVED BY THE COURT.