A. J. JOHNSON, Appellee and Cross Appellant,

v.

Bernard PATTISON, John Pattison and James Pattison, Appellants and Cross Appellees.

No. 54140.

Supreme Court of Iowa.

April 9, 1971.

Rehearing Denied June 21, 1971.

Miller, Pearson & Gloe, Decorah, for appellants and cross-appellees.

D. C. Nolan and Edward W. Lucas, Iowa City, for appellees and cross-appellants.

LeGRAND, Justice.

This is an action in equity asking both an injunction and damages for alleged violation of a restrictive covenant. The same relief is also sought on the ground the use of the property constitutes a nuisance.

The trial court granted the injunction as to part of the property; refused it as to the remainder; held the claim of nuisance was premature; and rejected the claim for damages.

Both plaintiff and defendants appeal. Defendants argue plaintiff was not entitled to any injunction at all while plaintiff by way of cross appeal insists the trial court should have enjoined as illegal the use of all of defendants' property for commercial purposes. Plaintiff also argues the trial court should have awarded damages for substantial decrease in the value of his property.

We affirm on defendants' appeal and reverse on plaintiff's cross appeal. We refer herein to, Bernard Pattison, John Pattison, and James Pattison as though they were the only defendants since the other defendants—M. L. Ponsar, C. L. Leitgen, and Villa Maclad, Inc.—have not appealed.

The history of this controversy dates back to 1949 when M. L. Ponsar, C. L. Leitgen and Alvin J. Kregel formed a nonprofit corporation under chapter 504, The Code, 1946, known as Villa Maclad, Inc. The Articles of Incorporation included this provision:

"The objects and purposes of this corporation shall be of an athletic and recreational nature, for the purpose of acquiring, preserving and developing a private camp along the banks of the Mississippi River near the town of Clayton, Iowa, which camp shall be named the Villa Maclad. * * * *"

Apparently as part of the incorporation plan, Alvin J. Kregel, one of the incorporators, conveyed certain real estate to the corporation. This is the only real estate the corporation owned and is the tract which the corporate articles said was to be used for "preserving and developing a private camp along the banks of the Mississippi River."

A small portion of this real estate was sold in 1950 to John Cvrk. This transaction is not involved here and is mentioned only as part of the general background. The deed to Cvrk provided in part as follows:

"A condition is made in this deed that the premises herein quit claimed will only be used for the purpose of a dwelling or summer cottage residence."

In 1960, Alvin J. Kregel withdrew from the corporation, leaving M. L. Ponsar and C. L. Leitgen as the sole stockholders, officers, and directors.

In 1961 Villa Maclad, Inc. conveyed two parcels of real estate to Dean Jones by quit claim deeds, each of which contained the following:

"A perpetual restrictive covenant is made a part of this deed, which restricts the use of this land for residential and cottage use and prohibits all commercial, industrial and such related use. *Grantee,* his agents and assigns agree in the event of a violation of this restriction title will revert to grantors herein or their agents or assigns then owners of the original tract from which this land is now conveyed."

On June 6, 1961, Dean Jones entered into a covenant with M. L. Ponsar and C. L. Leitgen (but not with the corporation) covering the real estate acquired by Jones in the deeds already referred to and also some

of that retained by the corporation. Except for the formal parts, that covenant was as follows:

"Whereas the undersigned are the owners of property in Blocks 1, 2, 6, 7 in Lower Clayton in Clayton County, Iowa, now therefore for good and valuable consideration passing from one to the other, receipt of which is hereby acknowledged, covenant is made that the above described land shall be perpetually restricted to use for residential and cottage establishment and use and forever prohibits all commercial, industrial and any related uses to commercial and industrial."

In 1962, Dean Jones conveyed the real estate he had purchased from Villa Maclad, Inc. to A. J. Johnson, the plaintiff herein. That deed repeated the restriction in the deeds by which Jones had acquired title.

On July 27, 1968, Villa Maclad, Inc. sold its remaining real estate (except two small lots) to defendants for $20,000. No restriction on the use of the property was included in that conveyance. Defendants say they had no notice of any covenant against commercial use. They promptly started to build a grain elevator large enough to process a million bushels of grain a year. At the time of trial construction of the elevator had not been completed.

Plaintiff in the meantime had built a home on his property. He promptly objected to defendants' proposed use of their property and threatened action to compel observance of the covenant which he claimed encumbered the property. Defendants insisted "everything was legal" and went forward with construction in the face of almost certain litigation. The parties now find themselves embroiled in a death struggle which might well have been avoided. It is apparent—at least in retrospect—a determination of this controversy should have been sought *before* defendants invested almost $200,000 in a plant the legality of which was challenged. And plaintiff perhaps should have sought a temporary injunction. Either course would have permitted the trial court to reach an equitable solution to avoid irreparable harm.

Instead the trial court was faced with a fait accompli which precluded such a result. Sometimes litigants make it impossible for courts to come up with a satisfactory solution to their problems. This is such a case.

We believe defendants' appeal may be determined solely by the covenant of June 6, 1961, which is hereafter referred to simply as the covenant. The cross-appeal, on the other hand, raises more troublesome issues and requires more extended discussion. Our conclusion to reverse on the cross-appeal is based on the finding plaintiff has established his right to relief under the doctrine of equitable or promissory estoppel.

I. We dispose of defendants' appeal first, although separate discussion of it might be unnecessary in view of our holding on the cross-appeal. However, we believe it advisable to treat it briefly.

The trial court enjoined defendants' proposed use of that part of the property described in the covenant signed by Dean Jones (plaintiff's grantor), M. L. Ponsar and C. L. Leitgen. Defendants assert as their only proposition for reversal that the trial court erred in holding the covenant was binding on Villa Maclad, Inc. They contend it was the *personal* covenant of Ponsar and Leitgen only. If this is correct, defendants as the corporation's grantees would not be bound either.

Defendants raise various issues concerning this matter, but we believe they must concede the trial court was right if (1) the covenant executed by Ponsar and Leitgen was binding on the corporation and (2) defendant took title with knowledge of the restriction. We find both these conditions were established by the record.

■ It is difficult to discover any purpose in the execution of the covenant un-

less it was meant to bind Villa Maclad, Inc. Ponsar and Leitgen did not hold title to the real estate, either then or later. What good was *their* promise not to use the property for commercial or industrial purposes? Are we to say this was intended to be a fraud on Dean Jones, who must have thought he was getting a binding agreement in return for his own? Either Ponsar and Leitgen were acting for the corporation or the whole transaction was to no avail. We hold Ponsar and Leitgen, the sole owners of Villa Maclad, Inc. and its only officers and directors, intended to bind that corporation when they executed the covenant and that Dean Jones, the other signatory, so understood its effect.

We have held that those who completely control a corporation and act toward it as though there were no distinction between its acts and theirs, as the record shows Ponsar and Leitgen did here, cannot subsequently avoid responsibility by placing the onus where it best suits their purpose. We agree with the trial court that the covenant is binding on Villa Maclad, Inc. Central Fibre Products Co. v. Lorenz, 246 Iowa 384, 66 N.W.2d 30 and Central National Bank and Trust Co. v. Wagener, (Iowa 1971), 183 N.W.2d 678, 682.

We attribute no improper motive to either Ponsar or Leitgen in the execution of this covenant. However, if we were to accept defendants' argument we would be compelled to do so. The result for which defendants argue would result in a fraud even though none was intended.

We believe the record is equally persuasive against defendants on the question of notice. The instrument was recorded and shown in the abstract of title. Defendants knew Ponsar and Leitgen were in complete control of the corporation. The abstract also disclosed those two had no right of ownership as *individuals* when they executed the covenant. Under these circumstances, there was sufficient evidence to reasonably put defendants on notice to inquire as to the binding effect of this instrument on Villa Maclad, Inc. Having

failed to do so, they cannot now escape its terms. See Hayne v. Cook, 252 Iowa 1012, 1029–1030, 109 N.W.2d 188, 197; Raub v. General Income Sponsors of Iowa, Inc., (Iowa 1970), 176 N.W.2d 216, 220, and citations.

We hold the trial court was right in enjoining the use of the real estate covered by the covenant for commercial or industrial purposes.

II. Plaintiff's victory on that score, however, is a hollow one because the covenant covers only Blocks 1, 2, 6, and 7 in Lower Clayton while defendants' grain elevator is not located on the restricted area, which is used only for storage purposes and as a roadway into the plant. For all practical purpose the trial court's injunction is nothing more than an inconvenience to defendants in the operation of their business. Hence plaintiff's cross-appeal seeks to prohibit commercial use of *all* defendants' property. He says there was a general plan and scheme to limit the corporate property solely to residential use. He argues this brings the case within the doctrine of Grange v. Korff, 248 Iowa 118, 79 N.W.2d 743, and Thodos v. Shirk, 248 Iowa 172, 79 N.W.2d 733.

He also relies on the doctrine of promissory estoppel, asserting he bought the property from Dean Jones and built his house thereon only after receiving assurances from Ponsar on behalf of Villa Maclad, Inc. that the property would never be used commercially. Plaintiff points out that under such circumstances Villa Maclad, Inc. is precluded from such use of the property, and defendants, who took with knowledge of the promise, are also bound thereby.

We find it unnecessary to decide if the first theory has been established because we hold defendants are estopped under the promise made by Villa Maclad, Inc. that the real estate would always be used for residential purposes.

III. Promissory estoppel—or equitable estoppel—is founded on "principles of morality and fair dealing and is intended

to subserve the ends of justice." Sioux City v. Johnson (Iowa 1969), 165 N.W.2d 762, 767. We also pointed out there that in applying this doctrine each case must be decided in the light of its surrounding facts and circumstances. There can be no hard and fixed rule for determining when it is appropriate. See also discussion in 1A Corbin on Contracts, section 204, page 232 and Restatement on Contracts, section 90.

■ We have recognized this principle under circumstances similar to those facing us here. Miller v. Lawlor, 245 Iowa 1144, 1152–1155, 66 N.W.2d 267, 272, 274; Shell Oil Co. v. Kelinson, (Iowa 1968), 158 N.W.2d 724, 729. The elements necessary to establish such estoppel are (1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle plaintiff to this relief. As pointed out in Miller v. Lawlor, supra, other factors must be present when a party relies on misrepresentation of fact in asserting the doctrine rather than on an unfulfilled promise, as is the case here.

Plaintiff does not plead promissory estoppel by name, but he alleges the facts upon which he depends to show his right to its benefits. His petition includes this:

"4. On or about June 18, 1962 * * * M. L. Ponsar acting on his own behalf and on behalf of C. L. Leitgen and Villa Maclad proposed to the plaintiff that he purchase [the property here involved] from Dean Jones, the then owner, who acquired said property by and through the defendants, M. L. Ponsar, C. L. Leitgen and Villa Maclad.

"5. In order to induce the plaintiff to purchase said property it was stated and represented to the plaintiff that [all of the real property] then owned by defendants, M. L. Ponsar, C. L. Leitgen, and Villa Maclad would be used only for residential purposes and that such property would never be sold for commercial, industrial or other related uses.

"6. Relying upon the statements and representations of the defendants, M. L. Ponsar, C. L. Leitgen and Villa Maclad the plaintiff was induced to purchase the property of which he is now the owner."

The petition further alleges a violation of this promise both by Villa Maclad, Inc. in the sale of the property to defendants and by defendants in the use to which they are now putting it.

■ We have said the issue of estoppel must ordinarily be plead but it need not be so designated. It is enough if the facts relied upon are set out. Farmers and Mechanics Savings Bank v. Campbell, 258 Iowa 1238, 1247, 141 N.W.2d 917, 922; Janssen v. North Iowa Conference Pensions, Inc., (Iowa 1969), 166 N.W.2d 901, 907.

■ IV. Of course, if plaintiff establishes promissory estoppel against Villa Maclad, Inc., and if defendants took title with knowledge, either actual or constructive, of such estoppel, they, too are estopped. 31 C.J.S. Estoppel §§ 131, 133, pages 665, 670; Hegna v. Peters, 199 Iowa 259, 265, 201 N.W. 803, 805; Thodos v. Shirk, 248 Iowa 172, 181, 79 N.W.2d 733, 739.

■ Defendants objected strenuously throughout the case that much of plaintiff's proof was barred because of the statute of frauds, consisting as it did of oral promises and oral representations made by Villa Maclad, Inc. through its officers. We believe this issue is disposed of by Miller v. Lawlor, supra, at 245 Iowa page 1149 and also at page 1154, 66 N.W.2d at page 273 where we said, "We do not understand that defendant questions the naked proposition that equitable estoppel may be effective to take a transaction out of the statute [of frauds], or more accurately stated, that the statute may not bar oral proof of the promise as a basis for equitable estoppel." That rule is equally applicable here. See also Hegna v. Peters, supra, 199 Iowa at page 266, 201 N.W. at page 805, and 2 Corbin on Con-

tracts, section 406, page 406. The Miller case is similar to that now before us in other respects too. There, as here, the evidence was indefinite and uncertain as to *details* but the fact of an agreement of some kind upon which the parties relied was beyond dispute. In Miller the defendant and his wife denied some of the conversations but did not gainsay the fundamental facts upon which the lawsuit rested. The same is true here. Ponsar admits "a gentleman's agreement" as to the use of the land. He admitted under pressure he had at one time said the real estate would not be used for commercial purposes "while they had it." At another place he admitted he had said without qualification that at least some of the property would not be used for commercial purposes. Leitgen, who was not as active in the transaction as Ponsar, "could not remember" if there had been any conversation about the use of the property.

As in the Miller case, too, here Ponsar and plaintiff were close friends. Their families took trips together; they enjoyed each other's hospitality. Ponsar wanted plaintiff "for a neighbor" and urged him to buy the property.

Plaintiff's testimony is, as might be expected, considerably stronger on all of these matters than that of Ponsar and Leitgen. He says Ponsar importuned him to buy and handled all negotiations, a fact which is confirmed by Jones but denied by Ponsar. Ponsar told him "at least 50 times" the property—all of it—would never be used for purposes other than residential. These conversations were had prior to the time the property was purchased.

We consider only statements made to, and relied on by, plaintiff in determining the existence of promissory or equitable estoppel. However, in passing on the credibility of the different versions we are inevitably influenced by the circumstances surrounding the entire transaction. What plaintiff says he was told (and what Ponsar and Leitgen admit in part) is consistent with the conduct of the corporation and its sole owners—the corporate purposes, the restrictions in every conveyance except that to defendants, their assumption that defendants would use the land only for residential purposes, and their statements that the sale would never have been made had they known the use to which defendants expected to put it.

We are then faced with the undisputed fact that before purchasing the real estate plaintiff had frequent conversations with Ponsar concerning the use of the Villa Maclad property. All parties admit there was an agreement of some sort. Plaintiff insists it related to all of the land without restriction as to time or ownership. Defendants rely on Ponsar's statement that it was only a "gentleman's agreement", by which we presume he meant it was an unenforceable promise.

Ponsar admits just enough to lend credence to plaintiff's claim. He admits an agreement, but denies its terms. He admits he promised the land would be limited to residential use but says the promise was to last "only while they had the land."

We hold plaintiff's testimony is the most plausible, the most likely, and easily the most credible and we find plaintiff has established he received a promise by Villa Maclad, Inc. through its officers and directors that, if he purchased the real estate he now owns, the adjacent property owned by Villa Maclad, Inc. would never be used for purposes other than residential.

Even more certain is the fact that plaintiff relied on these assurances. He testified repeatedly he bought only after receiving them, and he built his home on the strength of them. He stated unequivocally he would not have purchased the real estate except for these promises. Under the circumstances he was justified in relying on such representations, which were made to induce him to buy the land.

Again we find the case falls squarely within our Miller v. Lawlor opinion and

we quote from 245 Iowa, page 1155, 66 N.W.2d, page 274, as follows:

"It [oral promise made by defendant] was clearly the deciding factor without which plaintiffs would not have bought. It was not necessarily the *sole* reliance. It is sufficient that without it plaintiffs would not have acted. * * *" See also Shell Oil Co. v. Kelinson, supra, 158 N.W.2d at page 729.

V. Plaintiff must still show, of course, that defendants knew of the promise their grantor had made when they took title. Otherwise they would take free from the burden Villa Maclad had imposed on the land. Such knowledge may be either actual or constructive. Again we find against defendants. There is convincing evidence to show they had knowledge of an agreement concerning the use of the land and yet made no effort to determine the extent of the agreement, nor to ascertain what conditions were imposed on the property.

They were told by Ponsar there was an agreement affecting the land. They knew of plaintiff's claim before they acquired title. Before completing the transaction and after Ponsar had learned what defendants had in mind for the property—something they had studiously concealed as long as they could—he told defendants they were going to have trouble over the use of the property, "which didn't seem to bother them any."

The evidence shows defendants disregarded warnings that their proposed use of the land was prohibited. They made no effort to ascertain what plaintiff's rights were. They took title after being specifically warned of impending trouble and went ahead with construction even after threat of almost certain legal action. Nor did the filing of suit itself cause them any pause. Under such circumstances they cannot now assert they acted without knowledge of plaintiff's claim. What is reasonable to put a party on notice varies from case to case, but there is no doubt there was sufficient here to do so. 66 C.J.S. Notice § 11, page 642; 1 Merrill on Notice, section 65, page 63. See also Hayne v. Cook, 252 Iowa 1012, 1029, 109 N.W.2d 188, 197, and Raub v. General Income Sponsors of Iowa, Inc., (Iowa 1970), 176 N.W.2d 216, 220.

We hold plaintiff has established an oral promise binding upon defendants; that he relied thereon; that he would suffer irreparable damage if such promise were not enforced; and that he is entitled to relief against defendants.

VI. This brings us to the difficult question of what relief should be afforded. Plaintiff asks both an injunction and damages. The fact that defendants have violated the covenant restricting the use of the land does not automatically entitle plaintiff to an injunction. 42 Am.Jur.2d, Injunctions, section 56, page 798; Miller v. Lawlor, supra, 245 Iowa at page 1156, 66 N.W.2d 274; Riter v. Keokuk Electro-Metals Co., 248 Iowa 710, 723, 82 N.W.2d 151, 159.

In the latter case we discussed the factors to be considered in determining when injunctive relief is appropriate. This was a nuisance case but what we said there is equally applicable to the situation now before us.

Equity usually invokes its extraordinary injunctive power only when necessary to prevent irreparable harm or when the complaining party is otherwise without an effective remedy. If the injury is light and an injunction would result in serious hardship or loss to defendant, courts have refused to enjoin, leaving the plaintiff to his claim for damages. Under this comparative injury doctrine, injunctions which are likely to cause greater injustice than they seek to prevent are properly refused.

However, there are definite limitations to this rule. As said in 42 Am.Jur.2d,

Injunctions, section 60, page 804, "Certainly, the doctrine [of comparative injury or relative convenience] does not mean that substantial, certain, and irreparable damages * * * which might be prevented by injunction are to be left without remedy because of the fact that greater damages would result to the defendant, a wrongdoer, by issuing the injunction." See also 43 C.J.S. Injunctions § 87, page 587.

This court held in Johnson v. Robertson, 156 Iowa 64, 81, 82, 135 N.W. 585, 592, that enforcement of building restrictions may be denied where the defendant would thereby be subject to great hardship, but mere pecuniary loss to defendant is no basis for refusing an injunction.

Each case must rest on its own peculiar facts. Here we believe the equities are surely with plaintiff. It is true an injunction preventing operation of the elevator will cause defendants great damage. But what of plaintiff's plight if there is no injunction? Whatever hardship there it must be laid at defendants' door. It was their "take a chance" conduct which has brought about this unfortunate result, and the consequences of that course should not, in fairness and justice, be visited upon plaintiff.

There are numerous decisions holding a defendant to a strict accounting under such circumstances. Peters v. Davis, 426 Pa. 231, 231 A.2d 748, 751, 752; Armstrong v. Leverone, 105 Conn. 464, 136 A. 71, 75; Stewart v. Finkelstone, 206 Mass. 28, 92 N.E. 37, 40; Williamson v. Needles, 191 Okl. 560, 133 P.2d 211, 218; Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609, 612; Cantieny v. Boze, 209 Minn. 407, 296 N.W. 491, 495 (dissenting opinion); Moyerman v. Glanzberg, 391 Pa. 387, 138 A.2d 681, 684–685.

■ We believe plaintiff's only effective remedy is injunctive, even though that relief means defendants must abandon a business in which they have heavily invested. However, as the authorities heretofore cited point out, a defendant should not be permitted to spend large sums of money in violation of another's rights and then use that very act as a reason for escaping his obligation to the one he has harmed.

We have ordered injunctions in several cases quite similar to the present one as far as the effect of injunctive relief is concerned. Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 1111, 1114, 109 N.W.2d 695, 699; Bates v. Quality Ready-Mix Co., 261 Iowa 696, 705, 154 N.W.2d 852, 858. In each of those cases the injunction required the discontinuance of a going business because no other remedy would afford the plaintiff adequate redress.

We find our present plaintiff is similarly endangered. Money alone will not cure his trouble. Furthermore, as pointed out by some authorities, such a result would grant defendants virtual power of condemnation over plaintiff's property. Tyree v. Gosa, 11 Wash.2d 572, 119 P.2d 926, 930.

For the reasons stated we reverse the trial court on plaintiff's cross appeal and order defendants to cease forthwith their use of the real estate owned by them in Lower Clayton as described in the petition for the operation of a grain elevator or for any other commercial or industrial purpose.

■ On the remaining question of damages, we agree with the trial court that the record discloses no basis upon which an award could be made. What evidence there was dealt almost exclusively with damages resulting because the elevator was a *nuisance*. At the time of trial, the plant was still in the process of construction. The trial court held in effect that it could not say the operation of the elevator would in the future constitute a nuisance as a matter of law. We believe this ruling was correct.

■ VII. As a related matter there is here on appeal the claim that defendants

were guilty of contempt in violating the injunction issued by the district court. After a hearing on this issue, the trial court declined to rule because of the pending appeal. We have reviewed the evidence and, while it appears defendants were in violation of the terms of the decree, we are satisfied such violation was not contemptuous nor contumacious. We therefore hold defendants should not be punished for contempt.

VIII. The cross-appeal also challenges the apportionment of costs equally between plaintiff and defendants. In view of our finding here, we hold all costs should be assessed to defendants.

IX. In summary we affirm the trial court on defendants' appeal; we reverse on plaintiff's cross-appeal; and we enjoin defendants from operating their grain elevator at its present location or from using their property for any other commercial or industrial purpose.

Affirmed on defendants' appeal; reversed on plaintiff's cross appeal.

All Justices concur, except BECKER, J., who takes no part.