JAMESTOWN TERMINAL ELEVATOR,
INC., Plaintiff-Appellee,

v.

Archie HIEB, Defendant-Appellant.

Civ. No. 9198.

Supreme Court of North Dakota.

Nov. 5, 1976.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for appellant; argued by Gerald W. Jukkala, Jamestown.

MacKenzie & Jungroth, Jamestown, for appellee; argued by James R. Jungroth, Jamestown.

PAULSON, Justice.

This is an appeal by the defendant, Archie Hieb. Hieb appeals from the final judgment of the district court of Stutsman County awarding damages to Jamestown Terminal Elevator, Inc., a corporation [hereinafter Terminal], for breach of a contract to deliver grain; and from the order denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial. The matter was tried before a jury to whom special verdicts were submitted by the trial judge.

This action arose as a result of several telephone conversations between Hieb and representatives of Terminal on or about July 3, 1973. Terminal alleges that Hieb agreed to sell 10,000 bushels of No. 1 Hard Amber Durum at $2.65 per bushel and to deliver the same "within a couple weeks". Terminal also alleges that on the same day that Terminal "bought" Hieb's grain, the elevator immediately resold 10,000 bushels of durum wheat through Terminal's commission agent in Minneapolis, Minnesota, for delivery on August 31, 1973.

Hieb, on the contrary, alleges that no agreement between the parties was reached on July 3, 1973. He asserts that all that transpired was an oral offer by Terminal to buy 10,000 bushels of durum wheat at $2.65 per bushel, such offer to be accepted by Hieb upon his signing a written contract with Terminal which would specify the amount of grain, the price, and the delivery date.

When Hieb failed to deliver the 10,000 bushels of grain within the following two weeks, Terminal's manager, Donald DeMersseman, contacted Hieb at his farm on July 19, 1973, to determine when delivery of the grain would be forthcoming. Mr. DeMersseman testified that Hieb responded to his question concerning the delivery of the grain by stating that "I [Mr. DeMersseman] should wait until the price went down". Hieb denies having given such a response, alleging that he responded to Mr. DeMersseman's question by stating that "I [Hieb] didn't have any grain for him".

On August 14, 1973, Terminal, by its attorney, sent Hieb a certified letter demanding delivery of the grain by August 31, 1973. Terminal representatives assert that they always expected Hieb to honor his agreement and deliver the grain by August 31, 1973. When Hieb failed to deliver the grain on August 31, Terminal entered the open market to "cover [§ 41–02–91, N.D.C.C. (2–712, U.C.C.)]" on September 4, 1973, the first market day after August 31, 1973. The open market price on September 4 was $6.75 per bushel, resulting in a $37,500.00 increased cost to Terminal over the July 3, 1973, contract price.

On appeal, it is Hieb's initial contention that the trial court should have granted his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, on the ground that the evidence was insufficient to justify the verdict, in that such evidence did not support the jury's finding that an agreement was reached between the parties. We have recently defined the scope of our review of such a motion, in *Waletzko v. Herdegen*, 226 N.W.2d 648, 653 (N.D.1975), wherein we stated:

"As to the trial court's denial of Waletzko's motion for judgment notwithstanding the verdict or in the alternative for a new trial, the credibility of the witnesses and the weight to be given their testimony are questions of fact for the jury to determine. In determining the sufficiency of the evidence to sustain the verdict of the jury, we must view the evidence in the light most favorable to the verdict. [Citations omitted.] Our review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict; if there is, we are bound by the verdict."

Our perusal of the record indicates that there is substantial evidence to support the jury's finding that Hieb agreed to sell a specified amount of grain to Terminal. The evidence, when viewed from the light most favorable to the verdict, includes: (1) the testimony of both Terminal's manager, Mr. DeMersseman, and Terminal's assistant manager, Mr. Ancel Marsh, concerning the substance of their telephone conversations with Hieb on July 3, 1973; (2) the recording of the transaction in Terminal's business records in Terminal's usual course of business; (3) Terminal's documentation of an immediate reselling of a like amount of durum wheat by Terminal's commission agent in Minneapolis, Minnesota, on July 3, 1973; and (4) the testimony of Solomon Schroeder, a retired farmer, stating that in early July of 1973, Hieb had told him that Hieb had recently sold 10,000 bushels of durum wheat to Terminal at $2.65 per bushel. We must find on the basis of the above that the jury had before it substantial evidence to sustain its verdict. We are therefore bound by the jury's verdict and cannot substitute our judgment for that of the jury.

The second issue raised by Hieb is that the trial court erred in failing to grant his motion for a directed verdict on the ground that as a matter of law a contract could not be found to have existed because an essential element—the delivery date—was not agreed to by the parties. We find no merit in this contention.

Section 41–02–11(3), N.D.C.C. [2–204(3), U.C.C.], provides as follows:

"*Formation in general.*

.    .    .    .    .

"3. Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

Further, § 41–02–26(1), N.D.C.C. [2–309(1), U.C.C.], provides:

"*Absence of specific time provisions— Notice of termination.*—1. The time for shipment or delivery or any other action under a contract if not provided in this chapter or agreed upon shall be a *reasonable time.*" [Emphasis added.]

Section 41–01–14(2), N.D.C.C. [1–204(2), U.C.C.], helps to interpret the Code's use of "reasonable time", stating:

*"Time—Reasonable time—'Seasonably'.—*

. . . . .

"2. What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action."

Finally, § 41–01–15, N.D.C.C. [1–205, U.C. C.], in pertinent part, provides the following guides to establish the "nature, purpose and circumstances" of an agreement:

*"Course of dealing and usage of trade.* —1. A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

"2. A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.

"3. A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement."

. . . . .

■ The foregoing statutory provisions, when applied to the instant case, provide a basis for a jury to determine the delivery date intended. Although the testimony of Terminal representatives clearly indicated that Terminal desired delivery within two weeks of July 3, 1973, the testimony adduced throughout the trial provided the jury with an ample basis for determining that the previous "course of dealing" between the parties, in addition to the industry's "usage of trade", placed Hieb on notice that Hieb's delivery date would have to be on or before Terminal's delivery date, pursuant to Terminal's resale agreement of July 3, 1973, with its commission firm, un-

less another date was agreed upon by the parties. Thus, based upon the previous "course of dealing" of the parties and the industry's "usage of trade", the jury could determine that August 31, 1973, was a "reasonable time" for delivery. We cannot say as a matter of law that there was no basis for a determination of the delivery date intended by the parties; therefore, the motion for a directed verdict was properly denied.

■ The third issue raised by Hieb is that the trial court erred in failing to grant his motion for a directed verdict, on the ground that as a matter of law damages could not be awarded for breach of the oral contract between the parties because the statute of frauds barred said contract's enforceability. Specifically, Hieb is contending that the doctrine of promissory estoppel does not remove such contract from the requirements of the statute of frauds. Again, we find Hieb's contention unpersuasive.

■ Section 41–02–08(1), N.D.C.C. [2–201(1), U.C.C.], provides as follows:

*"Formal requirements—Statute of frauds.*—1. Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."

It is to be noted that this statute renders an oral contract for the sale of goods in excess of $500 "not enforceable", rather than "void" or "voidable". *Dangerfield v. Markel*, 222 N.W.2d 373, 377 (N.D.1974). Further § 41–01–03, N.D.C.C. [1–103, U.C.C.], provides:

"*Supplementary general principles of law applicable.*—Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, *estoppel*, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." [Emphasis added.]

In *Dangerfield, supra* 222 N.W.2d at 378, this court stated:

"Another alternative to the strict application of the Statute of Frauds in this case is the doctrine of equitable estoppel. . . . Where one party, in reliance on the other's representation or conduct, changes his position or otherwise suffers an unjust or unconscionable injury or loss, or where one party has accepted performance or benefits to the detriment of the other, the doctrine may be applied. [Citations omitted.] However, the statute must not render the contract void and the contract itself must be established by competent evidence."

In *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808, 812 (N.D. 1976), this court stated:

"The Statute of Frauds is intended to prevent frauds and perjuries, and it has often been said that courts ought not to allow the Statute of Frauds to be used as an instrument to accomplish fraud. [Citation omitted.] Estoppel in this State is limited for some purposes by a statute which provides:

'When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.' Section 31–11–06, NDCC.

"If the principle of estoppel is applied too broadly it would accomplish a complete derogation of the Statute of Frauds and estoppel can then become the tool to accomplish the fraud. Conversely, too narrow an application of the principle of estoppel can permit the Statute of Frauds to be the tool to accomplish the fraud."

Furthermore, in *Farmers Cooperative Ass'n of Churchs Ferry, supra* 239 N.W.2d at 813, this court quoted with approval the following statement of the elements of promissory estoppel applicable to the sale of goods, from an Annotation in 56 A.L.R.3d 1037, 1041–1042 (1974), § 2[a]:

"Based as it is upon a consideration of the facts in light of equitable considerations, public policy, fair dealing, and the like, the basic elements of an equitable estoppel, insofar as it relates to the person being estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts. Insofar as related to the party claiming the estoppel, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

In the instant case, Hieb conveyed the implication to Terminal that the sale was complete, knowing that Terminal would immediately resell the durum wheat; and Terminal had no method of ascertaining Hieb's true intentions at the time that Terminal had to rely upon Hieb's representation in order to insure securing the price Terminal had promised to pay Hieb for his durum wheat. Furthermore, Hieb's counsel conceded in oral argument before this court that the elements necessary for application of the doctrine of promissory estoppel existed in the instant case. We therefore will

not determine whether Hieb's conduct would have supported a finding of fraud, positive misrepresentation, or unconscionable conduct, as the trial court did in *Cole, supra,* 239 N.W.2d 808, and which was the basis of that decision. The motion for a directed verdict was properly denied.

■ Hieb's final contention on appeal is that the trial court should have granted his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, on the ground that the evidence was insufficient to justify the verdict in that the evidence did not support the jury's finding that Terminal made reasonable efforts and exercised ordinary care and diligence to reduce the resulting damages. Specifically, Hieb contends that Terminal failed to enter the open market to "cover" at the earliest reasonable time.

Section 41–02–91, N.D.C.C. [2–712, U.C.C.], provides:

"*'Cover'—Buyer's procurement of substitute goods.*—1. After a breach within the preceding section the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

"2. The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (section 41–02–94 [2–715, U.C.C.]), but less expenses saved in consequence of the seller's breach.

"3. Failure of the buyer to effect cover within this section does not bar him from any other remedy."

It is Hieb's contention that Terminal was clearly informed on July 19, 1973, of Hieb's intention not to deliver the grain, at the time when Hieb told Mr. DeMersseman that Hieb had no grain for him; and Hieb contends that Terminal should have entered the open market to cover on that date.

■ There is conflicting testimony as to what was communicated between the parties on July 19, 1973. Terminal's manager, Mr. DeMersseman, testified that no repudiation was made at that time by Hieb and that DeMersseman always expected Hieb to deliver the grain. In addition, Terminal communicated its understanding in a registered letter sent to Hieb on August 14, 1973, in which Terminal made its position clear that Terminal still expected Hieb to deliver the grain on or before August 31, 1973, and that it would wait until that date to cover. Thereafter, Hieb made no effort to communicate a contrary understanding to Terminal.

After analyzing these contentions, we believe the overriding issue is whether the jury accepted Hieb's version or Terminal's version of what was said on Hieb's farm on July 19, 1973, between the parties. This brings us to the question of fact which is to be resolved by the jury. The jury made its decision, and, on appeal, we are limited in our review of such decision in accordance with the appropriate rules of law. We do not substitute our judgment for that of the jury. This limits the issue to whether or not there was substantial evidence to sustain the verdict of the jury.

In *Vallejo v. Jamestown College,* 244 N.W.2d 753, 757 (N.D.1976), we stated:

"In determining the sufficiency of the evidence to sustain the verdict of the jury, we must view the evidence in the light most favorable to the verdict. [Citations omitted.]

"Our review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict; if there is, we are bound by the verdict even though there was conflicting evidence."

After having examined the evidence in this case, in light of the concession by Hieb's counsel in oral argument that the evidence supports the application of the doctrine of promissory estoppel, we conclude that there is substantial evidence to sustain the verdict of the jury. Consequently, we are not justified in setting aside the verdict; and, therefore, the motion for a directed verdict on the question of the reasonableness of Terminal's efforts to mitigate the damages was properly denied.

The judgment and the order denying the motion for judgment notwithstanding the verdict and for a new trial are affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.