WARDER & LEE ELEVATOR, INC., an
Iowa Corporation, Appellee,

v.

John W. BRITTEN, Appellant.

No. 61679.

Supreme Court of Iowa.

Jan. 24, 1979.

Walter A. Kollmorgen, of Kollmorgen & Schlue, of Belle Plaine, for appellant.

J. E. Baumert, of Baumert & Gerard, Sigourney, for appellee.

McCORMICK, Justice.

The question in this action for breach of an oral contract to sell grain is whether the trial court erred in holding defendant's statute of frauds defense under the Uniform Commercial Code was defeated by promissory estoppel. We affirm the trial court.

This case was tried to the court at law. The trial court's findings of fact have the effect of a special verdict and we examine the evidence in the light most favorable to the judgment. We are not bound by trial court determinations of law. *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 54–55 (Iowa 1977).

Plaintiff Warder & Lee Elevator, Inc., operates a grain elevator in the town of Webster. The corporation president, Francis Lee, managed the elevator for many years until he suffered a slight stroke in November 1974. He was succeeded as manager by his son James who had been an elevator employee since 1964. The Lees were the only witnesses at trial.

We recite the evidence in the light most favorable to the judgment. Francis Lee was alone in the elevator office on July 4, 1974. Defendant John W. Britten, a farmer in the area, came to the office during the morning with a friend. The elevator had purchased Britten's grain for years, and he and Lee were well acquainted. At Britten's request Lee quoted him the price the elevator would pay for new-crop corn and soybeans for fall delivery based on market prices of the prior day.

Britten offered to sell and Lee agreed for the elevator to purchase from Britten 4000 bushels of corn at $2.60 per bushel and 2000 bushels of beans at $5.70 per bushel for October-November delivery.

The elevator did not at that time require a seller to sign a memorandum or other writing to show the agreement. Instead,

the only writing consisted of notes showing the terms of sale made by Lee for internal bookkeeping purposes. All of the elevator's prior purchases from Britten had been upon oral agreement, and Britten had kept his promises on each occasion. In fact, no seller had previously refused to perform an oral agreement with the elevator.

It was the custom of the elevator not to speculate in grain but to act essentially as a broker. Thus on July 5, 1974, the elevator sold the same quantities of corn and beans as were involved in the Britten purchase for fall delivery to terminal elevators at Muscatine for a few cents more per bushel.

Grain prices increased substantially during July. On July 29, 1974, Britten called Francis Lee and said he wished to "call the deal off". Lee told him: "You cannot call it off. We sold this grain, and we expect delivery this fall." Britten said he would not deliver the grain.

In an effort to mitigate its loss and to enable it to meet its commitment to sell the grain, the elevator purchased appropriate quantities of new-crop corn and beans from other farmers on and shortly after July 29.

In August 1974, James Lee met Britten on a street in Webster. Britten initiated a conversation in which he said he would not fulfill his agreement and offered $500 in settlement. Although counsel for Britten objected to the admissibility of the evidence at trial, the objection was untimely and no motion to strike was made. Lee rejected the offer. He told Britten the elevator had sold the grain and expected him to perform under his contract.

Britten sold his 1974 crop elsewhere.

The elevator brought this action against Britten for breach of the oral agreement, seeking as damages the loss it sustained in covering its delivery obligation under the July 5 contracts by which it sold the quantity of grain purchased from Britten. See § 554.2712, The Code. That loss was $6478.34, which was the amount, plus interest, for which the trial court entered judgment.

Britten offered no evidence at trial. He relied solely on the statute of frauds in § 554.2201, The Code. The elevator urged promissory estoppel in bar of the defense.

The statute of frauds applicable to the sale of crops is § 554.2201. Under this statute an oral contract for the sale of goods for a price of $500 or more is unenforceable, with certain stated exceptions. The elevator does not contend any of those exceptions is applicable. Promissory estoppel is not among them.

Authority for use of promissory estoppel to defeat the statute of frauds, if it exists, must be found under § 554.1103. It provides:

Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

We have not had occasion to decide whether the provisions of § 554.2201 displace the doctrine of estoppel which would otherwise be available in accordance with § 554.1103. However, other courts which have considered the question have held the doctrine is available. Several of those decisions involved grain sales in circumstances analogous to those in the present case. See *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976); *Jamestown Terminal Elevator, Inc. v. Hieb*, 246 N.W.2d 736 (N.D.1976); *Farmers Elevator Company of Elk Point v. Lyles*, 238 N.W.2d 290 (S.D.1976).

When other courts have refused to apply the doctrine they have done so because of a different view of the doctrine of promissory estoppel rather than because of any perceived statutory bar to its use. See *Cox v. Cox*, 292 Ala. 106, 289 So.2d 609 (1974); *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 230 N.W.2d 588 (1975); *Farmland Service Coop. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976).

We have long recognized promissory estoppel as a means of defeating the general statute of frauds in § 622.32, The Code. See *Miller v. Lawlor*, 245 Iowa 1144, 66 N.W.2d 267 (1954); *Shell Oil Co. v. Kelinson*, 158 N.W.2d 724 (Iowa 1968); *Johnson v. Pattison*, 185 N.W.2d 790 (Iowa 1971). We see nothing in § 554.2201 which purports to require a different rule under the Uniform Commercial Code.

The listing of exceptions to the statute of frauds in § 554.2201 is plainly definitional. The provision does not purport to eliminate equitable and legal principles traditionally applicable in contract actions. Therefore it does not affect the viability of defenses to application of the rule of evidence which it defines. See White and Summers, Handbook of the Law Under the Uniform Commercial Code § 2–6 at 59 (1972) ("There is every reason to believe these remain good law, post-Code.").

If § 554.2201 were construed as displacing principles otherwise preserved in § 554.1103, it would mean that an oral contract coming within its terms would be unenforceable despite fraud, deceit, misrepresentation, dishonesty or any other form of unconscionable conduct by the party relying upon the statute. No court has taken such an extreme position. Nor would we be justified in doing so. Despite differences relating to the availability of an estoppel defense, courts uniformly hold "that the Statute of Frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme." 3 Williston on Contracts § 553A at 796 (Third Ed. Jaeger, 1960). The estoppel defense, preserved on the same basis as the fraud defense by § 554.1103, developed from this principle. "The Statute was designed as the weapon of the written law to prevent frauds; the doctrine of estoppel is that of the unwritten law to prevent a like evil." *Id.* at 797–798.

We have found no reported decision in any jurisdiction holding that the statute of frauds in the Uniform Commercial Code, defined as it is in § 554.2203, displaces principles preserved in § 554.1103. We do not believe that our legislature intended for it to do so.

■ We hold that the provisions of § 554.2201 do not displace the doctrine of estoppel in relation to the sale of goods in Iowa.

■ We recently discussed the elements of promissory estoppel in *Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978). Those elements are (1) a clear and definite oral agreement, (2) proof that the party urging the doctrine acted to his detriment in relying on the agreement, and (3) finding that the equities support enforcement of the agreement.

In the landmark case *Miller v. Lawlor*, supra, the court defined the doctrine in similar terms and did not limit its application to situations involving unilateral promises. 245 Iowa 1154, 66 N.W.2d 273. In fact the opposite contention was urged in that case, that the doctrine should be limited to situations where a clear and definite oral agreement is established. The court found such an agreement: "We find quite definite (practically undenied) evidence of 'a clear and definite oral agreement', relied on by plaintiff to his detriment." *Id.*

■ The issue is whether one has acted to his detriment in reliance upon the promise of another, and it is immaterial whether that promise was unilateral or bilateral. See, generally, Williston, supra, § 553A.

■ Specific circumstances which justify use of the doctrine as a means of avoiding a statute of frauds defense are now expressed in Restatement (Second) of Contracts § 217A (Tent. Draft 1–7, 1973), as follows:

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy grant-

ed for breach is to be limited as justice requires.

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

(a) the availability and adequacy of other remedies particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor.

This section complements Restatement (Second) of Contracts § 90, the predecessor of which we previously approved. See *Miller v. Lawlor*, supra. We now approve and adopt the standard in § 217A.

This standard moots the question whether Restatement of Contracts § 90 was intended to defeat the statute of frauds. See Annot., 56 A.L.R.3d 1037, 1050–1052. The standard is consistent with our holdings permitting the doctrine to be used to defeat the general statute of frauds. It is also consistent with the decisions allowing promissory estoppel to defeat the Uniform Commercial Code statute of frauds. See *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976); *Jamestown Terminal Elevator, Inc. v. Hieb*, 246 N.W.2d 736 (N.D.1976); *Farmers Elevator Company of Elk Point v. Lyles*, 238 N.W.2d 290 (S.D.1976). It provides a basis for distinguishing contrary holdings. See *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 230 N.W.2d 588 (1975); *Farmland Service Coop., Inc. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976). Of course, it also obviates any distinction based upon whether the promise is unilateral or bilateral. Restatement § 217A, comment a. ("This Section is complementary to § 90, which dispenses with the requirement of consideration if the same conditions are met, but it also applies to promises supported by consideration.").

In order to obtain the benefit of the doctrine of promissory estoppel to defeat a statute of frauds defense, the promisee must show more than the nonperformance of an oral contract. See 3 Williston on Contracts § 553A (Third Ed. Jaeger, 1960). Under § 217A the defense cannot be overcome, when it is otherwise applicable, unless the promisee proves (1) the promisor should reasonably have expected the agreement to induce action or forbearance, (2) such action or forbearance was induced, and (3) enforcement is necessary to prevent injustice.

In determining whether injustice can be avoided only by enforcement of the promise, the circumstances listed in § 217A(2) must be considered. In this manner, § 217A provides a means of deciding whether the equities support enforcement of the agreement.

We must now decide whether the trial court erred in applying the doctrine of promissory estoppel in this case.

Britten contends the elevator should not have the benefit of the doctrine because it did not plead it and did not prove he knew it would rely on the oral agreement.

We find no merit in his first contention for two reasons. The statute of frauds was asserted in Britten's answer. The elevator might have pled promissory estoppel if the court had ordered a reply, but no reply was ordered. See rule 73, Rules of Civil Procedure. Furthermore, counsel for the elevator twice invoked the doctrine on the record during the course of trial, and Britten did not challenge its failure to plead it at any time in the trial court. Under these circumstances he may not complain on appeal of the elevator's failure to plead it.

Although Britten's second contention presents a closer question, we also find it is without merit. We do so because

we believe substantial evidence supports the inference he expected or reasonably should have expected the agreement to induce action by the elevator. It was not necessary for the elevator to prove he actually knew it would rely on his promise. He should have known his prior dealings with the elevator gave the elevator manager every reason to believe he would keep his word. Furthermore, it is reasonable to believe that a farmer who sells grain regularly to country elevators knows they may immediately sell the grain which they purchase. In this case, Britten expressed no surprise when the elevator refused to allow him to rescind because of its sales in reliance on the agreement. Instead he sought to buy his way out of the transaction.

We conclude that the elements of promissory estoppel were supported by substantial evidence. In keeping with the standard in Restatement § 217A, we hold that injustice could be avoided only by enforcement of Britten's promise. The trial court did not err in holding the agreement was enforceable despite the statute of frauds defense.

AFFIRMED.

All Justices concur except REYNOLDSON, C. J., and ALLBEE, J., who dissent.

REYNOLDSON, Chief Justice (dissenting).

I respectfully dissent. The contract in issue falls squarely within the language and intent of the statute of frauds, § 554.2201, The Code 1973. The majority opinion, in my view, misapprehends and misapplies our rules relating to promissory estoppel. Further, the facts in this case do not bring it within the new principles pioneered in this decision.

I. In 1965 the Iowa legislature enacted the "Uniform Commercial Code—Sales." Sixty-First General Assembly, ch. 413, § 2101. It was "a complete revision and modernization of the Uniform Sales Act." D. Stanley & C. Coulter, Iowa Code Comment, 35 I.C.A. § 554.2101 at 118 (1967). Section 554.2201, the UCC's statute of frauds, underwent a substantial liberalizing overhaul designed to eliminate undesirable and overly technical features of the former law. See D. Stanley & C. Coulter, supra, at 145–48; 3 R. Dusenberg & L. King, Sales & Bulk Transfers under the UCC § 2.05 (1978); R. Hudson, Contracts In Iowa Revisited, 15 Drake L.Rev. 61, 75–77 (1966); A. Squillante, Sales Law In Iowa Under The UCC—Article 2, 20 Drake L.Rev. 1, 61–65 (1970).

At the same time the statute was modified to clarify that its exceptions were limited to those contained in its provisions. Before 1919 the predecessor to § 622.32, our general statute of frauds, covered "sale[s] of personal property." See § 4625, The Code 1897. In 1919 the Uniform Sales Act and its statute of frauds were enacted and the general statute was correspondingly revised. Compare §§ 554.4 and 622.32, The Code 1962. The catch-all exception in § 622.33, "or when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds," ceased to be applicable to sales of goods. Retained as applicable, however, were the "failure to deny" and "oral evidence of the maker" exceptions contained in § 622.34 and .35 respectively. See § 554.5, The Code 1962.

The lead sentence in § 554.2201 now provides:

Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

(Emphasis provided.) The § 622.34 and .35 exceptions are now incorporated in (3)(b) of the section. The specific limitation of exceptions to those contained "in this section" reflects a marked change from former § 554.4.

With exceptions to the statute of frauds now specifically limited by the terms of the statute to those enumerated in its provi-

sions, the majority's claim that promissory estoppel may be engrafted as simply another exception by virtue of § 554.1103 loses viability. Section 554.1103 permits application of other legal principles, including estoppel, "unless displaced by the particular provisions of this chapter." Plainly, the limiting language of § 554.2201 constitutes such a displacement. Had the legislature intended the concepts of §§ 90 and 217A of the tentative draft of the Restatement (Second) of Contracts to serve as an exception to its statute of frauds, it would have incorporated them as an exception in the act.

Displacing § 554.1103 with the exceptions in § 554.2201 does not render ineffectual the common-law principles contained in the former. First, they supplement other sections of the UCC except those, like § 554.-2201, which provide otherwise. Second, the victim of fraud who has no legal remedy because § 554.2201 prevents proof of the oral contract is not left out in the cold. The equitable remedy of restitution is not dependent upon proof of a contract. The basic elements of equitable estoppel and fraud are (1) intentional misrepresentation, (2) innocent, reasonable and foreseeable reliance, and (3) injury. See *Walters v. Walters*, 203 N.W.2d 376, 379 (Iowa 1973), quoted in *Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978) (equitable estoppel); *Grefe v. Ross*, 231 N.W.2d 863, 864 (Iowa 1975) (fraud). Nor is a contract enforced in those situations. Recovery is based on the injury suffered in the course of reliance. As we stated in *Grefe*, the liability is predicated on the fraud, not on any contract. 231 N.W.2d at 868. With these remedies available, the statute of frauds gives a fraudulent party little protection.

The limiting language of § 554.2201 at least ought to displace a doctrine which would gut the legislative intent of the statute. Distilled to its essence, § 217A, as interpreted by the majority, provides that if one contracting party should know the other contracting party will rely on the contract and injustice will result if the oral contract is not enforced, the statute of frauds will be ignored. It is a rare case

when either promisor in a bilateral contract does not rely on the contract. *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 284, 230 N.W.2d 588, 594 (1975). Any party to a contract should realize such reliance occurs. Most situations in which such an oral contract is breached result in injustice.

But the § 554.2201 statute of frauds obviously is designed to suffer these injustices in isolated oral contract cases in favor of the general public policy to reduce fraud and perjury, curtail litigation and controversy, and encourage written contracts in sales of goods for a price of $500 or more. It is significant that by trial time the plaintiff corporation in the case at bar was using written sales contracts with its customers.

Adopting §§ 90 and 217A as an unwritten exception to § 554.2201 will not only encourage oral contracts, it will bring a massive infusion of litigation to our overloaded courts. Trial courts will be compelled to determine, on an *ad hoc* basis, whether there was a contract, whether the promisor could "reasonably expect" the other party to rely on it, whether reasonable action or forbearance resulted, whether "justice requires" a remedy, and otherwise engage in the delicate balancing maneuvers mandated by § 217A(2).

In the final analysis, the majority opinion means written contracts are unnecessary in initial purchases of agricultural products, probably Iowa's largest economic marketplace and involving almost three billion dollars worth of goods each year. We should proceed down that road with great caution.

It is just as clear the majority is moving against a long-time trend:

This attitude [to extend exceptions to the statute of frauds] has given way gradually, and from quite an early period the statute of frauds has frequently been spoken of as a most beneficial statute which should be liberally construed to effect its object. The wisdom of the statute is a matter within the control of the legislature, not the judiciary, but it has been said to be justified by long experience. The tendency has long been to

restrict rather than to enlarge and multiply the cases of exceptions to the statute, and the right to invoke the statute as a defense is no longer regarded with disfavor. The courts should not be tempted to turn aside from its plain provisions merely because of the hardship of the particular case. They should not be controlled by the consequences following upon an application of the statute, or deem obnoxious a law which the legislature has placed in the statutes and allowed to remain for many years, and they cannot disregard the statute. They certainly should refuse to sanction such a construction as would permit the evils that the statute was intended to prevent.

73 Am.Jur.2d Statute of Frauds § 511 (1974).

II. Aside from the above factors, I am convinced promissory estoppel is not an appropriate device to serve as an exception to the statute of frauds.

Promissory estoppel is related to equitable estoppel and the two are frequently confused. 1 Williston on Contracts § 140 at 607–09 (3d ed. 1957). We recently defined the two in *Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978). In promissory estoppel a unilateral promise is relied upon, while in equitable estoppel reliance is placed on a misrepresentation or concealment of material fact. In either instance the party who reasonably and detrimentally relies will be protected if the equities of the situation require it, even to the extent in promissory estoppel of enforcing an otherwise gratuitous promise. See *Miller v. Lawlor*, 245 Iowa 1144, 1153, 66 N.W.2d 267, 273 (1954).

But there is no logical basis for using either equitable doctrine to enforce a bilateral, executory contract. The exchange of promises provides the requisite consideration to make such a contract valid and enforceable if its existence can be proved. To hold plaintiff corporation's immediate resale of defendant's grain constitutes detrimental reliance and makes defendant's promise to sell enforceable is unnecessary and distorts basic precepts of contract law.

Worse yet, a rule that such detrimental reliance (which is in every bilateral, executory contract to some degree) permits the promisee to avoid the statute of frauds misconceives the nature and purpose of § 554.2201.

The § 554.2201 statute of frauds is only a rule of evidence. *Stauter v. Walnut Grove Products*, 188 N.W.2d 305, 313 (Iowa 1971). It regulates the *proof* of *contracts* or *agreements* relating to sales of goods—the type of contract or agreement which should be reduced to writing. The exceptions itemized in the statute cover situations in which the legislature determined a signed writing was unnecessary to *prove* the *contract*. Promissory estoppel is a method by which courts *enforce unilateral promises. A unilateral promise is not a contract or agreement.* It follows the § 554.2201 statute of frauds does not regulate proof in those situations in which promissory estoppel may be invoked. It should also follow that promissory estoppel, as a substantive source of enforceability, has no place in a list of exceptions to a rule of evidence covering enforceable bilateral contracts.

Many courts have declined to create an additional exception based on promissory estoppel. They continue, as I am convinced we should, to view promissory estoppel as a doctrine of equity which provides only a means of enforcing unilateral promises, not a method of proving bilateral contracts. See, e. g., *Cox v. Cox*, 292 Ala. 106, 111–12, 289 So.2d 609, 613 (1974); *Tiffany Inc. v. W. M. K. Transit Mix, Inc.*, 16 Ariz.App. 415, 420–21, 493 P.2d 1220, 1225–26 (1972); *Tanenbaum v. Biscayne Osteopathic Hospital, Inc.*, 173 So.2d 492, 495 (Fla.App.1965); *Sacred Heart Farmers Co-op Elevator v. Johnson*, 305 Minn. 324, 326–27, 232 N.W.2d 921, 922–23 (1975) (sale of grain); *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. at 281–85, 230 N.W.2d at 592–94 (sale of grain); *Farmland Serv. Coop, Inc. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976) (sale of grain).

The majority distinguishes these cases as based on a view of promissory estoppel not held in Iowa. I cannot agree. Each appli-

cation of promissory estoppel by this court has occurred in a case involving a unilateral promise. We have never permitted a party to evade a clear statute of frauds *proof* problem with *bilateral* contract by the promissory estoppel device.

In *Miller v. Lawlor*, 245 Iowa at 1144, 66 N.W.2d at 267, relied on by the majority, a landowner orally assured the prospective purchaser of a neighboring residence that the landowner would not obstruct a scenic view. In *Shell Oil Co. v. Kelinson*, 158 N.W.2d 724 (Iowa 1968), the alleged promise was the plaintiff's oral notice of intent to rescind its exercise of an option to purchase. In *Johnson v. Pattison*, 185 N.W.2d 790 (Iowa 1971), the owner of a large tract of land orally assured the prospective purchaser of a portion of the property previously sold to another that the area would always be used for residential purposes. In *Merrifield v. Troutner*, 269 N.W.2d at 136, we held promissory estoppel was not established because the noncustodial parent had not relied on any "promise" by the custodial parent not to seek back support payments. The noncustodial parent had not promised to relinquish visitation rights in return for the promise.

Although the relevant element in these cases has been termed "a clear and definite oral *agreement*," taken in the context of each case the word "agreement" was always used in the sense of a unilateral, gratuitous promise, not a contract. The majority perpetuates this inaccurate terminology.

Our cases on this point trace back to *Lawlor* where this court clearly grounded its use of the doctrine on unilateral *promises* by quoting, *inter alia*, § 90 of the Restatement of Contracts, still in effect. 245 Iowa at 1153, 66 N.W.2d at 273. Of course, § 90 and its illustrations relate solely to unilateral promises. These Iowa cases the majority relies on hold only that the statute of frauds does not forbid oral proof of the unilateral promise for the purpose of establishing promissory estoppel. They do not provide authority for using oral proof of bilateral contracts in violation of the statute of frauds.

I agree that new § 217A (aided by revised § 90 as it is interpreted under the tentative draft) moots these problems and blends unilateral and bilateral promises, but that is why I would not adopt them. The tentative draft has essentially created a concept which is indistinguishable from promissory estoppel and applies it to bilateral contract proof problems.

The effect of promissory estoppel on § 554.2201 under the majority opinion is devastating. If the statute is to be repealed the policy decision should be left with the legislature.

III. Finally, it should be noted the facts in this case would not warrant application of § 217A of the Restatement Tentative Draft.

Imposition of § 217A would require proof the defendant seller in this case "should reasonably expect" that the plaintiff corporation would promptly resell the grain. There is no evidence in the transcript in this case to show defendant either knew this was plaintiff's practice or that it was a custom in the industry.

Majority seeks to supply this crucial missing proof by asserting "it is reasonable to believe a farmer who sells grain regularly to country elevators knows they may immediately sell the grain which they purchase."

Majority seems to be judicially noting not only what defendant knew about elevator operations but also the sales practices in a private industry. I doubt these matters qualify for judicial notice as being within common knowledge or capable of certain verification. *Motor Club of Iowa v. Department of Transp.*, 251 N.W.2d 510, 517 (Iowa 1977). Plaintiff corporation's operating officer did not assume defendant had this knowledge. He felt compelled to tell defendant the grain had been resold. This, of course, was long after the event and had no bearing on whether defendant should have "reasonably expect[ed]" such action.

I would reverse and remand for a new trial, during which proof of the alleged contract would be regulated by § 554.2201 undiluted by promissory estoppel.

ALLBEE, Justice (dissenting).

I join in division III of the Chief Justice's dissent. I am also in agreement with that dissent on what I perceive as the two essential and central points made in the first two divisions.

First, the legislature has made a determination that certain injustices which may occur under the auspices of the statute of frauds are outweighed by benefits conferred by that statute. This the legislature has the right to do. I would defer to that body's judgment.

Second, some difficulty has arisen because this court has not given recognition to the fact that the statute of frauds is not an appropriate defense in a case in which promissory estoppel is proposed as a consideration substitute. I would not now rely upon those faulty cases to erroneously emasculate the statute in cases where it is applicable: those involving a bilateral agreement.